[S.F. No. 22752. In Bank. Oct. 29, 1970.]

JEFFERSON INSURANCE COMPANY OF NEW YORK et al.,
Petitioners, v.
THE SUPERIOR COURT OF ALAMEDA COUNTY, Respondent;
FONG HONG MAY, Real Party in Interest.

COUNSEL

Long & Levit, Bert W. Levit, Victor B. Levit, John B. Hook and Stephen H. Silver for Petitioners.

No appearance for Respondent.

Stark, Simon & Sparrowe, Stark, Stewart, Simon & Sparrowe, John F. Wells and V. James Jackl for Real Party in Interest.

## OPINION

**McCOMB, J.**—By this petition for a writ of mandate, petitioners (hereinafter referred to as "the insurers") seek to compel respondent court to set aside an order vacating an appraisal award. The matter is before us on an alternative writ issued by the Court of Appeal.

Real party in interest (hereinafter referred to as "the insured") is the owner of a hotel building, which has a fair market value, excluding the value of the land, of $65,000. Prior to the fire loss which resulted in this litigation, the insured had acquired from the insurers fire insurance policies written in the California standard form prescribed by section 2071 of the Insurance Code. The policies contained an "average clause," providing for a proportionate reduction of any loss unless the building was insured to 70 percent of its "actual cash value."[1] The policies were written in the total amount of $45,000, which is approximately 70 percent of the fair market value of the building.

---

[1] The "average clause" limits the liability of the insurers, as follows: "[T]his company shall be liable for no greater proportion of such loss than the amount of insurance specified in such item bears to the percentage specified in the first page of this policy [70%] of the *actual cash value* of the property. . . ." (Italics added.)

The parties agreed that the amount of the loss was $24,102.05 ($25,702.05, the cost of repairs, less $1,600 betterment). The insurers, however, refused to pay that amount, contending that the property was substantially underinsured according to the average clause. Their theory was that "actual cash value," as used in the policy, does not mean fair market value, but means the replacement cost of the building less depreciation. The replacement cost less a reasonable depreciation factor is approximately $170,000. The insured contended that the building was sufficiently insured, asserting that the "actual cash value" referred to in the policy means fair market value.

Upon demand by the insurers, appraisers were appointed, pursuant to the statutory appraisal clause contained in the policy, for the purpose of having them determine the actual cash value of the building.[2] The appraisers, after some disagreement among themselves, accepted the insurers' contention that the term "actual cash value" means replacement cost less depreciation of the building, and determined on that basis that the actual cash value of the building was $169,547. One of the appraisers independently determined that the fair market value of the building was $65,000. From the appraisers' determination that the actual cash value was $169,547, the insurers offered to pay $10,154 as their proportion of the $24,102.05 loss sustained.[3] The insured rejected the offer and petitioned respondent court under section 1285 of the Code of Civil Procedure to vacate the appraisal award.[4]

The evidence before respondent court established conclusively that the appraisers had determined as a matter of law that the issue before them was the "replacement cost less depreciation" of the building, and that in arriving at the value listed in their award as "cash value," they refused to consider income, location, or any other relevant factor tending to show

---

[2] The appraisal clause in the policies is in the required statutory language of section 2071 of the Insurance Code, as follows: "In case the insured and this company shall fail to agree as to the actual cash value or the amount of loss, then, on the written demand of either, each shall select a competent and disinterested appraiser and notify the other of the appraiser selected within 20 days of such demand. The appraisers shall first select a competent and disinterested umpire. . . . The appraisers shall then appraise the loss, stating separately actual cash value and loss to each item; and, failing to agree, shall submit their differences, only, to the umpire. An award in writing, so itemized, of any two when filed with this company shall determine the amount of actual cash value and loss. . . ."

[3] The figure of $10,154 is arrived at by taking the ratio of the $45,000 policy limit to 70 percent of the actual cash value, and applying that fraction to the amount of the loss.

[4] By section 1280 of the Code of Civil Procedure, enforcement procedures respecting arbitration have been made applicable to appraisals.

the fair market value of the property, despite the fact that such evidence was made available for their use.

Based upon this showing, respondent court ordered that the award be vacated pursuant to section 1286.2, subdivisions (d) and (e), of the Code of Civil Procedure, thus finding by implication (1) that the appraisers had exceeded their powers by erroneously deciding a question of law (the meaning of "actual cash value"), which they had not been authorized to decide, and (2) that the insured had been substantially prejudiced by the refusal of the appraisers to consider material evidence. Respondent court, in ordering a second appraisal, directed that new appraisers "employ the standard definition of fair market value, which is synonymous with the 'actual cash value' in said insurance policy, namely, the price that a willing buyer would pay a willing seller, neither being under any compulsion to sell or buy."

■  *Questions:* First. *Did the appraisers, in determining the "actual cash value" of the insured's building, properly use "replacement cost less depreciation"?*

*No.* "Actual cash value," as used in section 2071 of the Insurance Code, is synonymous with "fair market value." (See *Martin* v. *State Farm Mut. Auto. Ins. Co.,* 200 Cal.App.2d 459, 470 [19 Cal.Rptr. 364]; *Hughes* v. *Potomac Ins. Co.,* 199 Cal.App.2d 239, 252-253 [18 Cal.Rptr. 650].) Thus, in *Martin,* the Court of Appeal, in construing the section, said: "The loss payable on an insurance policy is not the cost of the car to plaintiffs but its fair market value just prior to its destruction." (P. 470.)

■  It is clear that the Legislature did not intend the term "actual cash value" in the standard policy form, set forth in section 2071 of the Insurance Code, to mean replacement cost less depreciation. The term appears not only in the average clause, hereinabove referred to, but also in the insuring clause and must be given the same meaning in both. The latter clause insures "to the extent of the actual cash value of the property at the time of loss, but not exceeding the . . . cost to repair or replace the property. . . ." Since replacement cost less depreciation can *never* exceed replacement cost, it would not be logical to interpret this clause to mean "to the extent of the replacement cost less depreciation, but not exceeding the . . . cost to repair *or replace* the property." (Italics added.) If "actual cash value" had been intended to mean replacement cost less depreciation, the Legislature would not have used "the cost to . . . replace the property" as a limiting factor, and would have specified as a limiting factor only the cost to repair the property.

■ Second. *Did respondent court act properly in vacating the appraisal award because the appraisers based the award on a misconception of the law?*

*Yes.* Although *arbitrators* are frequently, by the terms of the agreement providing for arbitration, particularly in construction contracts, given broad powers (see, e.g., *Olivera* v. *Modiano-Schneider, Inc.,* 205 Cal.App. 2d 9, 11 [23 Cal.Rptr. 30], where the contract provided that any controversy or claims arising out of the contract were to be settled by arbitration), *appraisers* generally have more limited powers. ■ As stated in *Hughes* v. *Potomac Ins. Co., supra,* 199 Cal.App.2d 239, 253 [9]: "The function of appraisers is to determine the amount of damage resulting to various items submitted for their consideration. It is certainly not their function to resolve questions of coverage and interpret provisions of the policy." ■ Thus, in the present case the appraisers were authorized to determine only a question of fact, namely, the actual cash value of the insured building.

■ Since the evidence shows that the appraisers misinterpreted the meaning of "actual cash value" and therefore failed to decide the factual issue submitted to them, the insured properly invoked the jurisdiction of respondent court to vacate the award and order a rehearing. (Cf. *Allen* v. *Interinsurance Exchange,* 275 Cal.App.2d 636, 642, 644 [80 Cal.Rptr. 247].) As stated in *Meat Cutters Local No. 439* v. *Olson Bros., Inc.,* 186 Cal.App.2d 200, 204 [6] [8 Cal.Rptr. 789]: ". . . it is in the determination of whether a decided issue was properly before the arbitrator *or an issue before him was not decided,* that the agreement or order of submission falls under the scrutiny of the court." (Italics added.)

■ Where an appraisal award is based upon a misconception of the law, this fact may be proved to the court by extrinsic evidence, including a declaration of one of the appraisers. The declaration of an appraiser is properly received to show what the appraisers considered the issue to be, for the purpose of determining whether they exceeded their powers by making an error of law. (See *Sapp.* v. *Barenfeld,* 34 Cal.2d 515, 523 [212 P.2d 233]; *Allen* v. *Interinsurance Exchange, supra,* 275 Cal.App.2d 636, 642-643.)

The alternative writ is discharged, and the petition for a peremptory writ is denied.

Wright, C. J., Peters, J., Tobriner, J., Mosk, J., Burke, J., and Sullivan, J., concurred.