[No. B107786. Second Dist., Div. Seven. Feb. 9, 1998.]

ORENZO CHEEKS, Plaintiff and Appellant, v.
CALIFORNIA FAIR PLAN ASSOCIATION, Defendant and Respondent.

424

COUNSEL

Nicholas A. Weimer for Plaintiff and Appellant.

Bradford T. Child and Bradley P. Childers for Defendant and Respondent.

OPINION

**JOHNSON, Acting P. J.**—When Orenzo Cheeks's house was damaged in the 1994 Northridge earthquake his insurer, defendant California Fair Plan Association (CalFair) compensated him under his "actual cash value" policy in the amount necessary to repair the damage minus an allowance for depreciation. Cheeks sued CalFair claiming breach of contract, bad faith, fraud, and infliction of emotional distress. The trial court approved CalFair's method of calculating actual cash value under the policy, confirmed an arbitration award based thereon and granted CalFair's motion for summary judgment. Cheeks appeals from the summary judgment and the order confirming the arbitration award.[1] We reverse.

### FACTS AND PROCEEDINGS BELOW

The parties agree there are no material issues of fact.

---

[1] An order confirming an arbitration award is not appealable; the appeal lies from a judgment of confirmation. (Code Civ. Proc., §§ 1287.4, 1294; *Mid-Wilshire Associates* v. *O'Leary* (1992) 7 Cal.App.4th 1450, 1454 [9 Cal.Rptr.2d 862].) No such judgment appears in the record. However, because the summary judgment in this case was granted on the basis of the confirmation order we cannot address the former without addressing the latter.

Prior to January 1994, Orenzo Cheeks purchased an indemnity policy from CalFair covering damage to his home including damage caused by earthquake. The loss settlement provision of the policy states: "Covered property losses are settled at actual cash value at the time of loss but not more than the amount required to repair or replace the damaged property." Such a policy is commonly referred to as an "actual cash value" policy.

On January 17, 1994, the Northridge earthquake struck Los Angeles and Cheeks's home suffered damage to its roof, walls, paint, tiles and concrete among other things.

A few months after the earthquake, CalFair determined the actual cash value of Cheeks's loss to be $53,143.02. CalFair advised Cheeks this amount was based on the cost of repairing and replacing damaged portions of the house, which totaled $63,888.19, "reduced by applicable amounts of depreciation and/or betterment, thereby reducing the overall loss settlement to an actual cash value amount (as required by your policy)." For example, CalFair determined the cost of repairing the plaster was $9,787.06 to which it applied a depreciation factor of 20 percent ($1,957.41) resulting in an "actual cash value" of $7,829.65. CalFair determined the total depreciation on all items requiring replacement or repair to be $9,983.17 which meant to actually repair or replace the damaged portions of his house Cheeks would have to pay approximately $10,000 out of his own pocket. After applying the policy deductible of $8,800 (which is not in dispute), CalFair sent Cheeks a check for $44,343.02 in settlement of his claim.

Cheeks then filed suit against CalFair alleging various causes of action, all of which are rooted in his contention CalFair breached the terms of the policy by deducting from the cost of repair or replacement an amount representing depreciation of the thing repaired or replaced.

In accordance with a provision of the policy, the trial court ordered an appraisal of Cheeks's loss by a three-member panel of appraisers. Two of the three panel members computed Cheeks's loss on the same basis CalFair had used—of cost of repair or replacement minus depreciation—and calculated the actual cash value of the loss to be $53,776. Over Cheeks's objection the trial court confirmed this award and CalFair sent Cheeks a check for $632.98, the difference between the appraisal award and its earlier adjustment.

Following confirmation of the appraisal award, CalFair moved for summary judgment on all causes of action in Cheeks's complaint. It argued, based on the undisputed fact it had adjusted the loss within $700 of the

appraisal award, its adjustment of the loss had not breached the insurance contract and was not unreasonable, fraudulent, extreme, outrageous or made in bad faith. The trial court agreed and granted the motion. The court subsequently entered judgment for CalFair.

■ Because the summary judgment was based solely on the trial court's prior order confirming the appraisal award and the appraisal award was calculated by the same method as the original loss adjustment, the only question before us is whether the term "actual cash value" as used in Cheeks's policy means replacement cost less depreciation. Based on our Supreme Court's opinion in *Jefferson Ins. Co.* v. *Superior Court* (1970) 3 Cal.3d 398 [90 Cal.Rptr. 608, 475 P.2d 880] (*Jefferson*), we conclude "actual cash value" as used in Cheeks's policy means "fair market value," not replacement cost less depreciation. Therefore, the trial court erred in confirming the appraisal award based on replacement cost less depreciation and in granting summary judgment to CalFair on the basis of the appraisal award.

## DISCUSSION

CalFair concedes the loss settlement provision in Cheeks's policy is equivalent to the provision in the standard form fire insurance policy set out in Insurance Code section 2071.[2] Thus, CalFair is bound by the Supreme Court's interpretation of section 2071 in *Jefferson*.

Section 2071 provides in relevant part that the insured is compensated for loss "to the extent of the actual cash value of the property at the time of loss, but not exceeding the amount which it would cost to repair or replace the property with material of like kind and quality . . . ." In *Jefferson*, the Supreme Court held that " '[a]ctual cash value,' as used in section 2071 . . . is synonymous with 'fair market value.' " (3 Cal.3d at p. 402.) Furthermore, the court stated, "It is clear that the Legislature *did not intend the term 'actual cash value'* in the standard policy form, set forth in section 2071 of the Insurance Code, *to mean replacement cost less depreciation.*" (*Ibid.*, italics added.)

Therefore, the trial court erred in approving a method of loss calculation which our Supreme Court has plainly and unambiguously disapproved.

CalFair argues *Jefferson* does not really mean what it says. We find this argument unpersuasive.

*Jefferson* involved fire damage to a hotel owned by May. Jefferson had issued May a fire insurance policy in the amount of $45,000, written in the

---

[2]All future statutory references are to the Insurance Code.

language prescribed by section 2071. The policy contained the loss settlement provision quoted above and an "averaging clause" which provided for a proportionate reduction of any loss settlement if the hotel building was insured at less than 70 percent of its "actual cash value." (3 Cal.3d at p. 400.) Following the fire, the parties agreed for purposes of the loss settlement clause "actual cash value" would be calculated on the basis of replacement cost minus depreciation which resulted in a loss of $20,000. (*Id.* at p. 401.) However, when Jefferson attempted to apply this same formula to the averaging clause May protested. Using replacement cost minus depreciation, the "actual cash value" of the hotel building was $170,000. Because the policy limit was only $45,000, May stood to suffer a major diminution in his recovery if replacement cost minus depreciation was used to calculate "actual cash value" for purposes of the averaging clause. On the other hand, if the parties used the fair market value of the building, $65,000, to calculate "actual cash value" May would suffer virtually no reduction in his recovery by reason of the averaging clause. Needless to say, May contended that for purposes of the averaging clause "actual cash value" meant fair market value. (*Ibid.*)

When the parties could not agree on the formula to be used for purposes of the averaging clause, appraisers were appointed pursuant to a provision in the policy to determine the "actual cash value" of the building. The appraisers accepted Jefferson's contention "actual cash value" meant replacement cost minus depreciation and on this basis determined the "actual cash value" of the building was $170,000. Applying the averaging clause to that figure Jefferson offered May $10,000 to settle the $20,000 loss he sustained. May rejected Jefferson's offer. (*Jefferson, supra,* 3 Cal.3d at p. 401.)

On May's petition to vacate the appraisal award the trial court ruled the appraisers erred in arriving at the value in their award based on the replacement cost less depreciation of the building and "refus[ing] to consider income, location, or any other relevant factor tending to show the fair market value of the property, despite the fact that such evidence was made available for their use." (*Jefferson, supra,* 3 Cal.3d at pp. 401-402.) The trial court vacated the appraisal award and ordered a new appraisal. It directed the new appraisers to " 'employ the standard definition of fair market value, which is synonymous with the "actual cash value" in said insurance policy, namely, the price that a willing buyer would pay a willing seller, neither being under any compulsion to sell or buy.' " (*Id.* at p. 402.)

The Supreme Court denied Jefferson's petition for a writ of mandate compelling the trial court to set aside its order vacating the appraisal. In doing so the court held, as we previously noted, " '[a]ctual cash value' as

used in section 2071 . . . is synonymous with 'fair market value' " and does not "mean replacement cost less depreciation." (*Jefferson, supra,* 3 Cal.3d at p. 402.)[3]

CalFair points out the Supreme Court let stand, without criticism or comment, the parties' agreement to value the damage to the building on the basis of replacement cost less depreciation. According to CalFair, this suggests the court did not intend to abolish the use of replacement cost less depreciation as a method of deriving "actual cash value" for purposes of loss settlement. CalFair is correct. Nothing in *Jefferson* prevents the insurer and insured from *agreeing* to value damage to property on the basis of replacement cost less depreciation. The question in *Jefferson* was how the term "actual cash value" should be interpreted in the *absence* of such an agreement. The court settled that issue by holding that "actual cash value" as used in section 2071 means fair market value.

There can be no doubt the court intended its holding to apply to the loss settlement provision of section 2071. It said so three times. First, the court stated actual cash value "as used in section 2071" is synonymous with fair market value. (*Jefferson, supra,* 3 Cal.3d at p. 402.) It did not qualify its statement by saying actual cash value "as used in the *averaging clause* of section 2071" is synonymous with fair market value. Next, the court observed the term "actual cash value" appears in both the loss settlement and averaging clauses "and must be given the same meaning in both." (*Ibid.*) Finally, the court explained why the language of the loss settlement clause indemnifying the insured " 'to the extent of the actual cash value of the property [not to exceed the amount which it would] cost to repair or replace the property' " could not mean " 'to the extent of the replacement cost less depreciation [not to exceed the amount which it would] cost to repair or replace the property.' " Such an interpretation would make no sense because, by definition, replacement cost less depreciation can *never* exceed replacement cost without depreciation. "If 'actual cash value' had been intended to mean replacement cost less depreciation, the Legislature would not have used 'the cost to . . . replace the property' as a limiting factor, and would have specified as a limiting factor only the cost to repair the property." (*Ibid.*)

CalFair also contends the *Jefferson* court's reference to the appraisers' insistence on using replacement cost less depreciation and their refusal to

---

[3]The court did not recognize or discuss section 2051, which arguably codifies replacement cost less depreciation as the sole measure of indemnity in most fire insurance policies. That section provides in relevant part: "[T]he measure of indemnity in fire insurance is the expense to the insured of replacing the thing lost or injured *in its condition at the time of the injury.*" (Italics added.)

even consider "income, location, or any other relevant factor tending to show the fair market value of the property" implies the court was simply rejecting the exclusive use of replacement cost less depreciation as the method of determining "actual cash value." Under CalFair's interpretation, *Jefferson* does not prohibit the use of replacement cost less depreciation if it is shown to be one, or the only, "relevant factor" in determining the fair market value of the property.

We cannot square this interpretation of *Jefferson* with the court's holding " '[a]ctual cash value,' as used in section 2071 of the Insurance Code, is synonymous with 'fair market value.' " (3 Cal.3d at p. 402.) Fair market value under *Jefferson* means " 'the price that a willing buyer would pay a willing seller.' " (*Ibid.*) Depending on the type of building involved, its capacity to produce income and its location, along with its age, condition, fitness for the buyer's purpose and similar considerations, would be relevant in determining the building's fair market value; its replacement cost less depreciation would not. Moreover, CalFair's interpretation is inconsistent with the court's specific finding ". . . the Legislature did not intend the term 'actual cash value' . . . to mean replacement cost less depreciation." (3 Cal.3d at p. 402.) If the court meant the Legislature did not intend "actual cash value" *to be limited to* replacement cost less depreciation it easily could have said so.

In conclusion, we find the Supreme Court's decision in *Jefferson* clear and unambiguous as to the meaning to be attributed to a loss settlement provision expressed in the words of section 2071 or their equivalent. Because CalFair admittedly based its loss settlement provision on section 2071, CalFair is bound by *Jefferson*, as are we.[4] CalFair, however, has a simple remedy. If it wants to determine "actual cash value" on the basis of replacement cost less depreciation all it has to do is say so in the policy.[5]

---

[4]We recognize calculating loss based on fair market value may not always be fair to the insured or the insurer. (Zalma, *"Actual Cash Value" Should Not Always Be Synonymous With Market Value in California* (1990) 21 U. West L.A. L.Rev. 51, 56-57; Reader, *Modern Day Actual Cash Value: Is It What the Insurers Intend?* (1987) 22 Tort & Ins. L.J. 282, 284-285.) But the same can be said of replacement cost less depreciation and a third method of calculation known as the "broad evidence" rule. (Reader, *supra*, at pp. 284-289.) In essence, all three are attempts to measure the unmeasurable. (See Zalma, *supra*, at pp. 51-52.) Nevertheless, our Supreme Court has spoken on the subject and we are bound by its decision. (*Auto Equity Sales, Inc.* v. *Superior Court* (1962) 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937].)

[5]This can be accomplished by using words such as " 'actual cash value, with proper deduction for depreciation.' " (*Hughes v. Potomac Ins. Co.* (1962) 199 Cal.App.2d 239, 252-253 [18 Cal.Rptr. 650]; 15 Couch on Insurance (2d ed. 1983) § 54:129, p. 514.)

## DISPOSITION

The judgment is reversed and the matter remanded to the trial court with directions to vacate its order confirming the appraisal award and for further proceedings consistent with the Supreme Court's opinion in *Jefferson*. Appellant is awarded costs on appeal.

Woods, J., and Neal, J., concurred.

Respondent's petition for review by the Supreme Court was denied April 29, 1998. Baxter, J., and Brown, J., were of the opinion that the petition should be granted.