[No. B128480. Second Dist., Div. Four. Oct. 4, 2001.]

COMMUNITY ASSISTING RECOVERY, INC., Plaintiff and Appellant,
v.
AEGIS SECURITY INSURANCE COMPANY et al., Defendants and
Respondents.

**COUNSEL** ·

Shernoff, Bidart & Darras, Michael J. Bidart and Sharon J. Arkin for Plaintiff and Appellant.

Robie & Matthai, Daniel J. Koes and Pamela E. Dunn for Defendants and Respondents USAA Casualty Group et al.

Lord, Bissell & Brook and David F. Hauge for Defendants and Respondents Continental Insurance Company et al.

Munger, Tolles & Olson and Ronald K. Meyer for Defendant and Respondent Allstate Insurance Company.

Thayer, Harvey & Gregerson, Mark J. Alexander and Dale H. Thayer for Defendants and Respondents Merced Mutual Insurance et al.

Severson & Werson and William L. Stern for Defendants and Respondents MIC General Insurance Corporation et al.

Thelen, Reid & Priest, Ted W. Harris, Hilary N. Rowen and Robert M. Blum for Defendant and Respondent California State Automobile Association Inter-Insurance Bureau.

Barger & Wolen, Steven H. Weinstein, Larry M. Golub, Richard G. DeLaMora and Kent R. Keller for Defendants and Respondents Aegis Security Insurance Company et al.

Sonnenschein, Nath & Rosenthal, Thomas M. Hanson and Paul E.B. Glad for Defendants and Respondents Colonial Penn Insurance Company et al.

Pillsbury, Madison & Sutro, John M. Grenfell and Robert L. Wallan for Defendant and Respondent Great Pacific Insurance Company.

Scott D. Schabacker for Defendant and Respondent Wawanesa Mutual Insurance Company.

E. S. Wilson for Defendants and Respondents Sutter Insurance Company and Anza Insurance Company.

Cummins & White, J. Thomas Gilbert and Susan E. Dallas for Defendants and Respondents Allianz Insurance Company et al.

Hines & Smith, Kevin L. Smith and Christopher L. Diener for Defendant and Respondent United Casualty Insurance Company of America.

**OPINION**

**HASTINGS, J.**—Plaintiff, Community Assisting Recovery, Inc., a non-profit corporation, filed this action on March 6, 1998, against 194 insurance companies which do business in the State of California. The second amended complaint is the operative pleading and alleges that plaintiff was formed to provide "consumer information and education for the full and proper restoration of earthquake-damaged buildings," and that it has brought the instant action "on behalf of the general public pursuant to Business & Professions Code section 17204."

It is alleged on information and belief that the companies issued insurance policies, some covering damage to property, some covering loss of use, and some providing the replacement value of lost property, and all with substantially identical language to that required by Insurance Code section 2071. The essence of the legal claim is contained within paragraphs 202 and 203, as follows:

"202. Pursuant to California Insurance Code sections 2070 and 2071, in the absence of some agreement or provision to the contrary in the policy which is substantially equivalent to or more favorable to the insured, an insurer providing fire insurance or related coverage on property in the State of California *must adjust the 'actual cash value' of losses covered under the policy on the basis of fair market value,* i.e., what a willing seller would pay a willing buyer, neither being under the compulsion to buy or to sell, *and may not utilize a formulation based on replacement cost less depreciation.*

"203. Despite the fact that claims under policies issued pursuant to Insurance Code sections 2070 and 2071 are to be valued on the basis of fair market value rather than replacement cost less depreciation, unless the policy defines actual cash value as replacement cost less depreciation and that valuation is substantially equivalent to or more favorable to the insured, plaintiff is informed and believes and thereon alleges that, *during the four years last passed prior to the filing of this action, defendants have adjusted, and continue to adjust, or have concluded such claims on the basis of 'replacement cost less depreciation' in violation of controlling California law.*" (Italics added.)

Plaintiff prays for an injunction requiring respondents to notify all their insureds who have made claims under property policies within the last four years that they *may* have a claim, and to recalculate the prior claims on the basis of fair market value, *unless* replacement cost less depreciation would be more favorable to the insureds. In addition, the complaint prays for restitution or disgorgement of illegally gained profits, and for attorney fees and costs.

Respondents' general demurrers to the second amended complaint were sustained without leave to amend. Judgment was entered dismissing the action on September 30, 1998, and plaintiff filed its timely notice of appeal on November 30, 1998.

DISCUSSION

■ On appeal from a judgment of dismissal entered after a general demurrer is sustained, we independently review the complaint to determine

whether it states a cause of action, and if not, whether there is a reasonable possibility that it could be amended to do so. (*MacLeod v. Tribune Publishing Co.* (1959) 52 Cal.2d 536, 542 [343 P.2d 36].) We review the trial court's ruling, not its reasoning. (*Rodas v. Spiegel* (2001) 87 Cal.App.4th 513, 517 [104 Cal.Rptr.2d 439].) Nor are we limited by the plaintiff's theory. (*Quelimane Co. v. Stewart Title Guaranty Co.* (1998) 19 Cal.4th 26, 38 [77 Cal.Rptr.2d 709, 960 P.2d 513].) We treat all properly pleaded material facts as true, but not contentions, deductions or conclusions of fact or law. (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318 [216 Cal.Rptr. 718, 703 P.2d 58].)

 Plaintiff's action is brought under authority of Business and Professions Code section 17200 et seq., the unfair competition law, or UCL.[1] "Section 17200 'is not confined to anticompetitive business practices, but is also directed toward the public's right to protection from fraud, deceit, and unlawful conduct. [Citation.] Thus, California courts have consistently interpreted the language of section 17200 broadly.' [Citation.] ' "The statute imposes strict liability. It is not necessary to show that the defendant intended to injure anyone." ' [Citations.]" (*South Bay Chevrolet v. General Motors Acceptance Corp.* (1999) 72 Cal.App.4th 861, 877 [85 Cal.Rptr.2d 301].) Under Business and Professions Code section 17204, an action under the UCL may be brought "by any person acting for the interests of itself . . . or the general public."

 The legal basis for plaintiff's claim of unlawful business practice is concisely set forth in its opening brief on appeal as follows: "The complaint in this case alleges—and those allegations must be deemed true—that the defendants have been adjusting property loss claims on the basis of replacement cost less depreciation rather than on the basis of fair market value, in violation of the mandates set forth in *Jefferson* [*Ins. Co. v. Superior Court* (1970) 3 Cal.3d 398 [90 Cal.Rptr. 608, 475 P.2d 880]]. Since an 'unlawful' business practice actionable under the UCL is one that violates an existing law, including case law, the alleged misconduct can be addressed under the UCL. (*Stop Youth Addiction* [*v. Lucky Stores, Inc.* (1998)] 17 Cal.4th [553,] 562 [71 Cal.Rptr.2d 731, 950 P.2d 1086].)" Based on this alleged "unlawful

---

[1]The Legislature did not designate a title for the statutory scheme beginning with Business and Professions Code section 17200. In its most recent cases examining section 17200 et seq., the California Supreme Court described these sections as the unfair competition law. (See *Kraus v. Trinity Management Services, Inc.* (2000) 23 Cal.4th 116, 121 [96 Cal.Rptr.2d 485, 999 P.2d 718].) In earlier opinions, the court had termed it the Unfair Business Practices Act. (*Bank of the West v. Superior Court* (1992) 2 Cal.4th 1254, 1266 [10 Cal.Rptr.2d 538, 833 P.2d 545].) We follow the most recent practice and refer to this claim as one for unfair competition and we reference the collection of statutes giving rise to this claim as the UCL.

business practice," plaintiff seeks injunctive relief to compel readjustment of any and all claims which *may* have resulted in recovery of an amount less than required under *Jefferson.*

We conclude that plaintiff's complaint does not state an "unlawful business practice" under the UCL because the simplistic legal formulation of the claim mischaracterizes the holding in *Jefferson* and fails to take into consideration the safeguard of the appraisal process provided by the Legislature within Insurance Code section 2071.

Insurance Code section 2071 requires coverage "to the extent of the actual cash value of the property at the time of loss, but not exceeding the amount which it would cost to repair or replace the property. . . ." Thus, "actual cash value" is not the only standard relevant to adjusting claims. Later, the section provides the following relating to claims:

"Requirements in case loss occurs

"The insured shall give written notice to this company of any loss without unnecessary delay, . . . furnish a complete inventory of the destroyed, damaged and undamaged property, showing in detail quantities, costs, actual cash value and amount of loss claimed; and within 60 days after the loss, unless such time is extended in writing by this company, the insured shall render to this company a proof of loss, signed and sworn to by the insured, stating the knowledge and belief of the insured as to the following: the time and origin of the loss, the interest of the insured and of all others in the property, the actual cash value of each item thereof and the amount of loss thereto. . . .

"Appraisal

"In case the insured and this company shall fail to agree as to the actual cash value or the amount of loss, then, on the written demand of either, each shall select a competent and disinterested appraiser and notify the other of the appraiser selected within 20 days of such demand. The appraisers shall first select a competent and disinterested umpire; and failing for 15 days to agree upon such umpire, then, on request of the insured or this company, such umpire shall be selected by a judge of a court of record in the state in which the property covered is located. The appraisers shall then appraise the loss, stating separately actual cash value and loss to each item; and, failing to agree, shall submit their differences, only, to the umpire. An award in writing, so itemized, of any two when filed with this company shall determine the amount of actual cash value and loss. Each appraiser shall be paid

by the party selecting him and the expenses of appraisal and umpire shall be paid by the parties equally. [¶] . . . [¶]

"When loss payable

"The amount of loss for which the company may be liable shall be payable 60 days after proof of loss, as herein provided, is received by this company and ascertainment of the loss is made either by agreement between the insured and this company expressed in writing or by the filing with this company of an award as herein provided.

"Suit

"No suit or action on this policy for the recovery of any claim shall be sustainable in any court of law or equity unless all the requirements of this policy shall have been complied with, and unless commenced within 12 months next after inception of the loss."

As quoted, Insurance Code section 2071 requires appraisal for resolution of contested claims. The appraisal term creates an arbitration agreement subject to the statutory contractual arbitration law. (See *Louise Gardens of Encino Homeowners' Assn., Inc. v. Truck Ins. Exchange, Inc.* (2000) 82 Cal.App.4th 648, 657 [98 Cal.Rptr.2d 378]; Code Civ. Proc., § 1280 et seq.) As an arbitration award, the appraisers' award may be vacated or confirmed and judgment entered upon it. (See *Cheeks v. California Fair Plan Assn.* (1998) 61 Cal.App.4th 423, 426-427 [71 Cal.Rptr.2d 568].) Thus, notwithstanding how the insurer approaches valuation of the damaged property during adjustment of the claim, the Legislature has provided the remedy to which the parties must resort for determination of the amount of the loss.

In fact, the dispute in *Jefferson* arose out of the appraisal process. The Supreme Court concluded that the arbitration award was properly vacated not, as plaintiff's argument suggests, due to the insurer's adjustment or settlement practices, but because the appraisers used the erroneous standard. (*Jefferson Ins. Co. v. Superior Court, supra*, 3 Cal.3d at p. 403.) Nowhere did the court conclude that the insurer had been guilty of an unlawful act in how it had adjusted the claim. Nor did it suggest that insurers in the future would be guilty of unlawful acts by adjusting the claim for some amount other than fair market value, replacement cost, or cost of repair.

The standard form policy imposes on the insured claimant an obligation to provide "a complete inventory of the destroyed, damaged and undamaged property, showing in detail quantities, costs, actual cash value and amount of

loss claimed. . . ." (Ins. Code, § 2071.) Thus, the *insured* carries the initial responsibility to determine the "actual cash value," or the fair market value of the property at the time of the loss. If the insurer then offers the replacement cost less depreciation, the insured may demand an appraisal. (Ins. Code, § 2071.) In some cases, the insured may prefer an evaluation based upon replacement cost less depreciation, since that evaluation can result in a more favorable settlement. (See, e.g., *Elliano v. Assurance Co. of America* (1975) 45 Cal.App.3d 170, 179 [119 Cal.Rptr. 653].) As pointed out in *Cheeks v. California Fair Plan Assn.*, *supra*, 61 Cal.App.4th 423, "Nothing in *Jefferson* prevents the insurer and insured from *agreeing* to value damage to property on the basis of replacement cost less depreciation. The question in *Jefferson* was how the term 'actual cash value' should be interpreted in the *absence* of such an agreement." (*Id.* at p. 428.)

Nor can we conclude that a practice by one or more carriers of using the "replacement cost less depreciation" valuation is an "unfair practice." A business practice is "unfair," "when it offends an established public policy or when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." (*People v. Casa Blanca Convalescent Homes, Inc.* (1984) 159 Cal.App.3d 509, 530 [206 Cal.Rptr. 164, 53 A.L.R.4th 661], disapproved on other grounds in *Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.* (1999) 20 Cal.4th 163, 184-187, fn. 12 [83 Cal.Rptr.2d 548, 973 P.2d 527] [definition inadequate in antitrust cases or actions between direct competitors].) The complaint does not allege that respondents violated Insurance Code section 2071 by failing to include the standard form language; to the contrary, it is alleged that they did include the language. The complaint does not allege that respondents interfered with the appraisal process, deceived or coerced the insureds to settle for replacement cost less depreciation, or that they engaged in any acts which might have been a breach of the standard form policy. In short, the second amended complaint is devoid of any facts which might amount to a practice which "offends an established public policy," or a practice which "is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." (See *People v. Casa Blanca Convalescent Homes, Inc.*, *supra*, 159 Cal.App.3d at p. 530.)

■ We recognize that unfair competition statutes have always been framed in "broad, sweeping language, precisely to enable judicial tribunals to deal with the innumerable ' "new schemes which the fertility of man's invention would contrive." ' [Citation.]" (*Barquis v. Merchants Collection Assn.* (1972) 7 Cal.3d 94, 112 [101 Cal.Rptr. 745, 496 P.2d 817].) And we are mindful that what is unfair or fraudulent, unlike unlawfulness, is a

question of fact, which involves an equitable weighing of all the circumstances, a process which usually precludes the court from sustaining a demurrer. (See *Schnall v. Hertz Corp.* (2000) 78 Cal.App.4th 1144, 1167 [93 Cal.Rptr.2d 439].) However, we will affirm a judgment of dismissal where the complaint fails to allege facts showing that a business practice is unfair, unlawful or fraudulent. (See, e.g., *Shvarts v. Budget Group, Inc.* (2000) 81 Cal.App.4th 1153, 1157 [97 Cal.Rptr.2d 722].)

■ The Legislature has provided more than one measure to adjust claims under section Insurance Code 2071, "actual cash value" being only one. It is the initial responsibility of the insured to identify the "actual cash value" of the property damaged and, if the insured disagrees with a value suggested by the carrier, the appraisal process provides the means by which the dispute is to be settled. In light of the scheme provided by section 2071, plaintiff has failed to demonstrate an unlawful or unfair practice. While plaintiff has offered to amend the complaint to plead a class action, it has not offered to amend in order to plead any additional facts. ■ It is plaintiff's burden to prove that there is a reasonable possibility of amendment to state a cause of action. (*Blank v. Kirwan, supra,* 39 Cal.3d at p. 318.) To carry its burden, plaintiff must show the manner it can amend its complaint and demonstrate how that amendment will change the legal effect of the pleading. (*Goodman v. Kennedy* (1976) 18 Cal.3d 335, 348-349 [134 Cal.Rptr. 375, 556 P.2d 737].) "Where the appellant offers no allegations to support the possibility of amendment and no legal authority showing the viability of new causes of action, there is no basis for finding the trial court abused its discretion when it sustained the demurrer without leave to amend. [Citations.]" (*Rakestraw v. California Physicians' Service* (2000) 81 Cal.App.4th 39, 44 [96 Cal.Rptr.2d 354].)

## DISPOSITION

The judgment is affirmed. Respondents shall have their costs on appeal.

Vogel (C. S.), P. J., and Curry, J., concurred.

Appellant's petition for review by the Supreme Court was denied January 3, 2002. Chin J., did not participate therein.