GRIMES, J., Dissenting.
I respectfully dissent, because I conclude the appraisal Farmers Insurance Company, Inc., has demanded under the insurance contract and the statute may not be deferred while the trial court resolves legal issues that cannot be decided by the appraisers. I believe the trial court abused its discretion when it denied Farmers’s motion to compel an appraisal. The arbitration statute specifies that the court may delay an appraisal only when the court finds that decision of other issues that cannot be decided in an appraisal may make the appraisal unnecessary. No such finding was made or could reasonably be made in this case. Moreover, even if the Kirkwood and Doan[1] cases are correct that appraisal may be deferred for a declaratory judgment on statutory interpretation issues, there are none in this case; the issues are factual ones about whether Farmers does what Insurance Code section 2051 (all further section references are to this code unless otherwise specified) requires it to do. A declaratory judgment that Farmers does or does not do what section 2051 requires will not assist or inform an appraisal, as the appraisers are in any event bound to follow section 2051. Consequently, there is no justification for failing to follow the mandate of section 2071, requiring an appraisal on demand.
Before I elaborate, it may be helpful to mention the following. I agree that an appraiser cannot, and appraisal will not, resolve the principal legal issue plaintiffs raise: whether Farmers’s methodology for determining actual cash value is illegal. An appraisal will simply determine the actual cash value of plaintiffs’ lost or damaged property. And if plaintiffs’ allegations are true, Farmers has caused them harm. But requiring plaintiffs to comply with the appraisal provisions of the contract does not erect a barrier to the pursuit of their claims. If the appraisers apply the legally required standard, plaintiffs will receive the full amount due under the insurance contract for their property loss, and will do so sooner rather than later, after protracted discovery and courtroom proceedings. If the appraisers fail to use the legally required standard, the appraisal award may be vacated just as it was in Jefferson Ins. Co. v. Superior Court (1970) 3 Cal.3d 398 [90 Cal.Rptr. 608, 475 P.2d 880] (Jefferson). But in either case, plaintiffs may pursue their claims after the appraisal.
*1200 In my view, the trial court failed to follow the dictates of both section 2071 and the general arbitration statutes when the court denied, “without prejudice to renewal,” Farmers’s motion to compel appraisal.
First, the statutory and contractual language of section 2071 is clear. To the extent plaintiffs are suing “on this policy for the recovery of any claim,” they may not do so unless “all the requirements of this policy shall have been complied with . . . .” (§ 2071.) One of those requirements is an appraisal, on demand of either party, in any instance where “the insured and this company shall fail to agree as to the actual cash value or the amount of loss . . . .” (Ibid.) That has happened in this case.
Second, the arbitration statutes compel the same result. Code of Civil Procedure section 1281.2 requires a trial court to order arbitration (the court “shall order the [parties] to arbitrate”) if an agreement to arbitrate exists. Here, an agreement, mandated by statute, exists. The trial court has the discretion to delay an order to arbitrate, but that discretion is not unlimited; it is specifically circumscribed by statute. The court has discretion to delay an order to arbitrate if it determines that (as here) there are other issues not subject to appraisal that are the subject of a pending action, but only if it also finds that “a determination of such issues may make the [appraisal] unnecessary . . . .” (§ 1281.2, subd. (c), 3d par.; see Acquire II, Ltd. v. Colton Real Estate Group (2013) 213 Cal.App.4th 959, 978 [153 Cal.Rptr.3d 135] (Acquire II) [“When the dispute between parties to an arbitration agreement includes both arbitrable and nonarbitrable claims, section 1281.2(c) limits the trial court’s discretion to delaying arbitration, and only if the court first determines that resolving the nonarbitrable claims in court may make arbitration of the arbitrable claims unnecessary.”].)[2]
Here, the trial court made no such determination, and it is hard to see how the court could have done so. Indeed, the trial court said, “[t]his is not to say that appraisal may not be viable at a later stage of the litigation.” It does not appear that the trial court believed, when it delayed the appraisal, that appraisal would be unnecessary—or even that there was any significant possibility it would be unnecessary—after the court issues a declaration on the legality of Farmers’s practices. That being so, the court had no authority under the arbitration statutes to delay the appraisal.
*1201 The trial court understandably relied on the Kirkwood and Doan cases, involving issues virtually identical to those in this case. In Kirkwood, the court affirmed the trial court’s order denying, without prejudice, the insurer’s motion to compel appraisal. Kirkwood described the trial court’s order as “a matter of sequencing, in effect deferring the appraisal until the interpretation issues were resolved.” (Kirkwood, supra, 193 Cal.App.4th at p. 60.) Kirkwood held that “[tjhis approach does not run afoul of section 2071 or the arbitration statutes.” (Ibid.) It is on this point that I disagree with Kirkwood. In my view, Code of Civil Procedure section 1281.2 does not give the court discretion to “sequenc[e]” the appraisal for case management purposes; it may defer the appraisal only if it finds a determination of other issues may make the appraisal unnecessary.
But even if I agreed with Kirkwood on that point, in this case—in contrast to Kirkwood—counsel for Farmers has advised this court that Farmers now agrees with plaintiffs on the legal interpretation of section 2051: namely, that depreciation may not be based solely on age and that consideration of physical condition is required. While this concession—made for the first time in the trial court on the day of the hearing—appears to be a belated attempt to strengthen its position that appraisal is required now rather than later, Farmers is bound by that concession, and in fact there is no need to construe the meaning of the statute. Of course the question remains whether Farmers in fact complies with the statute, but that is a very different question, and will remain to be litigated no matter what value the appraisers put on plaintiffs’ loss.
Before I elaborate on these points, it may be useful to summarize the rationale that brought the Kirkwood and Doan courts to a conclusion different from mine.
1. Kirkwood
As stated above, the Kirkwood court was presented with claims much like plaintiffs’ claims in this case. In Kirkwood, the court affirmed the trial court’s order denying, without prejudice, the insurer’s motion to compel appraisal, agreeing with the trial court’s reasoning “that [the plaintiff] had properly invoked its declaratory relief powers to resolve a matter that was outside the scope of a statutory and contractual appraisal.” (Kirkwood, supra, 193 Cal.App.4th at p. 53.) The court said: “We think the trial court was right in its conclusion that an appraisal was not mandated ‘right now’ because the declaratory relief cause of action asked the court to make a declaration that [the insurer] was misconstruing section 2051(b). Denying the motion to compel appraisal without prejudice, the [trial] court was clear: T don’t see how the plaintiff gets out of an appraisal later.’ In other words, given the *1202 limited role of an appraisal, the court essentially bifurcated the case, determining that it should first issue a declaration on the statutory issue, ‘and then have it inform the appraisal when it goes forward.’ In short the court ruled that the agreement to arbitrate did not include the threshold contract and statutory interpretation issues, which were beyond the purview of the appraisers. We agree.” (Id. at p. 57, italics added.)
Kirkwood’s analysis consisted first of the conclusion that deferring the appraisal did not “run afoul of section 2071 or the arbitration statutes,” and second, of an analysis and rejection of the California and federal cases (more on these cases, post) suggesting that appraisal must precede other litigation. Kirkwood said that the federal cases did not address “the central reality of this case, namely that the trial court determined [the plaintiff] properly invoked its declaratory relief powers, thereby justifying its nonprejudicial rejection of [the insurer’s] motion to compel appraisal.” (Kirkwood, supra, 193 Cal.App.4th at p. 62.) In other words, because the appraiser cannot resolve contractual and statutory interpretation issues, “therefore appraisal was properly deferred in this case.” (Ibid.)
Further, Kirkwood pointed to “the real, deleterious consequence of forcing insureds to pay for an appraisal prior to a definitive judicial declaration establishing the correct legal basis for determining actual cash value.” (Kirkwood, supra, 193 Cal.App.4th at pp. 62-63.) The court observed that a judicial declaration in the insurer’s favor would be “the end of the line,” with no need for an appraisal, saving the insured from being forced to pay for one. (Id. at p. 63.) And, if the court found otherwise, the declaration “would inform the appraisal in this case and would have the meritorious effect of staving off future appraisals and litigation based on the same unlawful behavior.” (Id. at p. 63.) The court concluded that “judicial economy favors resort to declaratory relief in this instance by heading off duplicative future actions challenging [the insurer’s] statutory interpretation as reflected in its adjustment policy.” (Ibid.)
I am not persuaded that a request for declaratory relief—a discretionary remedy in equity—allows the trial court to ignore a specific statutory restriction on its discretion to delay an appraisal. Policy considerations such as judicial economy in “staving off future appraisals and litigation based on the same unlawful behavior” (Kirkwood, supra, 193 Cal.App.4th at p. 63) or the “strong policy favoring declaratory relief’ (Doan, supra, 195 Cal.App.4th at p. 1101) have no place in a trial court’s exercise of its discretion to delay appraisal; the only consideration is the one stated in the statute: if the court finds resolution of other issues may make the appraisal unnecessary. (Cf. Acquire II, supra, 213 Cal.App.4th at p. 978 [“a trial court must decide whether [Code of Civil Procedure] section 1281.2(c) applies based only on *1203 the three conditions identified in that subdivision”; “[o]nly then may the court consider judicial economy and other similar factors in deciding how to exercise the discretion section 1281.2(c) confers . . . .”].)
So, in my view, Kirkwood used an erroneous standard when it concluded appraisal could properly be deferred based on the appraiser’s inability to decide statutory and contractual interpretation issues. And, the suggestion by the Kirkwood court that no appraisal would be necessary if the trial court determined that the insurer’s practices did not violate section 2051 (which seemed rather unlikely) appears to be speculative and contrary to the trial court’s own statement that “appraisal later” was likely.
2. Doan
The other case plaintiffs rely on to support the trial court’s denial of Farmers’s motion to compel appraisal is Doan, supra, 195 Cal.App.4th 1082, where the court concluded the trial court “has discretion to stay the appraisal proceeding pending resolution of the legal questions.” (Id. at p. 1099.) Doan presented the “identical” question “decided in Kirkwood: Must a party submit to an appraisal under section 2071 prior to obtaining a judicial determination of the meaning of section 2051?” (Id. at p. 1102.) Doan continued: “Kirkwood answered that question in the negative, concluding that a decision to stay the appraisal, in order to resolve ‘the interpretation issues’ first, ‘does not run afoul of section 2071 or the arbitration statutes.’ ” (Ibid., quoting Kirkwood, supra, 193 Cal.App.4th at p. 60.)
Doan, unlike Kirkwood, referred to and quoted the pertinent arbitration statute giving the court discretion to delay an arbitration. (Doan, supra, 195 Cal.App.4th at p. 1100.) The Doan court found, citing Code of Civil Procedure section 1281.2, subdivision (c), that Kirkwood’s rationale was “bolstered by explicit statutory authority permitting the discretionary stay of appraisal proceedings pending resolution of issues outside the appraisers’ limited jurisdiction.”[3] (Doan, at p. 1104.)
But Doan, despite quoting the statute, does not acknowledge or address the express limitation on the court’s discretion: a finding that delaying the appraisal for the resolution of other issues “may make the [appraisal] unnecessary . . . .” (Code Civ. Proc., § 1281.2, subd. (c), 3d par.; see, Acquire II, supra, *1204 213 Cal.App.4th at p. 978; RN Solution, Inc. v. Catholic Healthcare West (2008) 165 Cal.App.4th 1511, 1521 [81 Cal.Rptr.3d 892] [“The court would then have had discretion to delay its order to arbitrate the arbitrable claims under section 1281.2(c), only if it first determined that the adjudication of the nonarbitrable claims in court might make the arbitration unnecessary.” (italics added)].) Instead, the Doan court observed that the “decision whether to stay the appraisal pending resolution of the interpretation issues is committed to the trial court’s sound discretion,” and that “[a] number of factors inform that decision, including policy considerations.” (Doan, supra, 195 Cal.App.4th at p. 1100.) Doan enumerated several policies the trial court could consider, including the “strong policy favoring arbitration,” the “strong policy favoring declaratory relief,” and judicial economy. (Id. at pp. 1100-1101.)
None of the cases Doan cites on the trial court’s discretion involves the court’s discretion to delay arbitration between two parties that have agreed to arbitrate; they involve the court’s discretion under Code of Civil Procedure section 1281.2, subdivision (c), where litigation with third parties is at issue. (E.g., Cronus Investments, Inc. v. Concierge Services (2005) 35 Cal.4th 376 [25 Cal.Rptr.3d 540, 107 P.3d 217].) That provision of the arbitration statute is irrelevant to this case. In short, Doan does not persuade me that policy considerations not identified in the arbitration statute may be used to “inform” the court’s decision on whether to delay an appraisal.
The trial court’s failure to follow the mandate of Code of Civil Procedure section 1281.2 is a sufficient reason to reverse the trial court’s order denying Farmers’s motion to compel appraisal as an abuse of discretion. But other reasons likewise support the conclusion that reversal is appropriate.
First, there is no real statutory interpretation issue in this case. Farmers has conceded that the plain language of section 2051 requires it, as plaintiffs contend, to consider the physical condition of the property in arriving at the actual cash value, and to apply depreciation to structural components only if they are normally repaired or replaced within the useful life of the structure. The only dispute to be resolved by declaratory relief is whether Farmers in fact does this.
Second, there is no reason to think a judicial declaration that Farmers does not, in fact, follow the statute, will somehow “inform the appraisal in this case,” thereby justifying delay of the appraisal. The appraisers are required to follow the statute, and if they make an award based on a misconception of the law, the award may be vacated. (Jefferson, supra, 3 Cal.3d at p. 403.) But there is no reason to believe the appraisers will misconceive the law. In short, the declaratory relief plaintiffs seek—in substance, a declaration that Farmers does not use the condition of the item to determine physical depreciation in *1205 violation of section 2051, subdivision (b)(2)—will do nothing at all to affect or “inform” the appraisal process, and there is thus no purpose to be served by declaratory relief in advance of the appraisal.
This point becomes clear if we consider this question: What declaration about the illegality of Farmers’s practices can the trial court provide that will assist the appraiser in determining the “actual cash value and loss to each item”? (§ 2071.) Stated differently, what will the trial court’s declaration tell an expert appraiser that he or she does not already know about determining the actual cash value of an item?[4]
The answers to questions about Farmers’s practices (e.g., whether Farmers may depreciate property through a standardized schedule rather than through examination of the condition of the property) are of no use to an appraiser, who has only one mission: to determine the actual cash value of the property. It simply does not matter to an appraiser what Farmers has done or not done. The appraiser’s task is to determine the actual cash value (§ 2071), that is, “the amount it would cost” to repair or replace the thing lost, “less a fair and reasonable deduction for physical depreciation based upon its condition at the time of the injury” (§ 2051, subd. (b)(2)). Nothing the trial court says about the legality of Farmers’s adjustment practices will add to the appraiser’s expertise in making that factual determination of value.
Under questioning at oral argument, plaintiffs’ counsel indicated that plaintiffs first want discovery, to find out what Farmers is actually doing, and then want a declaration from the court that those practices are illegal (and an order to Farmers to readjust the claims in conformity with § 2051). As to personal property, plaintiffs want the trial court to declare, for example, that physical depreciation means “wear and tear only,” that items may not be depreciated based on age, and that Farmers is not allowed to use a standardized depreciation schedule. As to structural components, plaintiffs want the court to declare, for example, that depreciation may not be deducted for *1206 framing and other designated categories of structural components they contend are not normally subject to repair and replacement during the useful life of the structure.
In my view, it is unnecessary for such a declaration to precede the appraisal Farmers has requested, and to which it is entitled under section 2071. Expert appraisers already know what “physical depreciation” and “condition” mean, and they do not need the court to explain them.
I find it particularly striking that the trial court should be asked to declare that specific categories of structural components—framing, for example (the complaint also mentions “electrical, floor coverings, fencing, . . . cement, carpentry/trimwork, finishes, . . . rough carpentry, [and] plumbing,” among a number of other categories)—are not “normally subject to repair and replacement” during the useful life of the structure and therefore may not be depreciated. Who better than an expert appraiser would know the useful life of a structure, and who better than an expert appraiser would know which of the components of a structure are “normally subject to repair and replacement” during that structure’s useful life? Plaintiffs say an appraiser cannot decide whether a particular type of component is “normally” repaired or replaced during the useful life of a structure because that is not a “valuation” question. But of course it is a valuation question. The appraiser is charged with determining “the amount it would cost the insured to repair, rebuild, or replace” a partial loss to the structure, and the appraiser cannot do that—he or she cannot come to a loss amount—without knowing or deciding which components are and which components are not normally repaired or replaced during the structure’s useful life.[5]
Thus, even disregarding what I see as the clear mandate of section 2071 and the general arbitration statute, the rationale for delaying an appraisal— *1207 grounded on “informing] the appraisal” (Kirkwood, supra, 193 Cal.App.4th at p. 63)—is unfounded. Appraisers do not need a judicial opinion on the legality of Farmers’s practices, or on the meaning of “physical depreciation,” or on precisely which structural components are normally repaired or replaced during the structure’s useful life.
Finally, I cannot end without observing that there is California and federal precedent supporting the view that, entirely aside from the strictures of Code of Civil Procedure section 1281.2, subdivision (c), appraisal may not be delayed.
In Community Assisting Recovery, Inc. v. Aegis Security Ins. Co. (2001) 92 Cal.App.4th 886 [112 Cal.Rptr.2d 304] (Community Assisting), the plaintiff brought an unfair competition law claim against 194 insurance companies, alleging they used the wrong standard to adjust property loss claims (replacement cost less depreciation, rather than the fair market value standard the Jefferson court had held was the proper standard), and seeking injunctive relief to compel readjustment of all claims based on fair market value (unless replacement cost less depreciation would be more favorable to the insured). {Community Assisting, at p. 890.) The appellate court affirmed the dismissal of the action on demurrer, finding the complaint did not state an unlawful business practice, because it “mischaracterize[d] the holding in Jefferson and fail[ed] to take into consideration the safeguard of the appraisal process provided by the Legislature . . . .” (Community Assisting, at p. 892.) Among other things, the court said that section 2071 “requires appraisal for resolution of contested claims”; the appraisal term “creates an arbitration agreement subject to the statutory contractual arbitration law”; the appraisal award “may be vacated or confirmed”; and so, “notwithstanding how the insurer approaches valuation of the damaged property during adjustment of the claim, the Legislature has provided the remedy to which the parties must resort for determination of the amount of the loss.” (Community Assisting, at p. 893.)
In short, Community Assisting tells us that, as here, the insurer’s method of valuing property—legal or not—was irrelevant to the determination of the amount of the loss, which the Legislature placed in the hands of the appraisers.[6]
*1208 In addition, federal cases have resolved complaints alleging insurers used an improper valuation method by concluding appraisal is required first. In Enger v. Allstate Ins. Co. (9th Cir. 2010) 407 Fed. Appx. 191, the Ninth Circuit viewed the issue raised by the individual plaintiff as “a straightforward question of contract interpretation,” despite the plaintiff’s “attempts to characterize her suit as raising issues of statutory interpretation warranting declaratory relief . . . .” (Id. at pp. 192-193.) “The contract makes no exception where the source of the dispute is the valuation method used: so long as the parties ‘fail to agree as to the actual cash value or amount of loss,’ the appraisal remedy is triggered at the request of either party,” and “because ‘full compliance with the policy terms’ is a contractual prerequisite to bringing suit, [the plaintiff] first must submit to the appraisal.” (Id. at p. 193.)
The federal district court in Pivonka v. Allstate Ins. Co. (E.D.Cal., Dec. 12, 2011, No. 2:ll-cv-1759-GEB-CKD) 2011 U.S.Dist. Lexis 142770 (Pivonka) reached the same conclusion, granting the insurer’s motion for appraisal and staying the case pending the conclusion of the appraisal process. In Pivonka, as here, the insurers pointed out that, unlike Kirkwood and Doan, the parties in Pivonka “ ‘do not have a dispute about the standard that governs appropriate depreciation,’ ” as shown by prelitigation correspondence from the insurer. (Pivonka, at pp. *7-*8.) Pivonka concluded the record presented “factual disputes concerning whether [the insurer] failed to pay the actual cash value of the subject property, and falsely represented that the amount set forth in its settlement was the ‘actual cash value.’ The gravamen of each pled claim depends on resolution of these factual disputes.” (Id. at p. *12.) The court saw no need “to clarify the parties’ legal relations before appraisal is ordered.” (Id. at p. *13.)
In summary, I am not suggesting that plaintiffs’ claims should not go forward in due course. Plaintiffs are entitled to discovery and a chance to show Farmers engages in illegal practices that result in unnecessary appraisals or that effectively coerce insureds into settlements for less than the actual cash value of their lost property. I do, however, assign great importance to statutory mandates. Here, the statutes tell us, first, that Farmers is entitled to an appraisal on demand (§ 2071) and second, that the trial court has discretion to delay an appraisal only where the court’s decision on other issues between the parties may make the appraisal unnecessary (Code Civ. Proc., § 1281.2, subd. (c), 3d par.). As the latter finding cannot be made here, Farmers is entitled to an appraisal now, not later. Moreover, nothing in the *1209 declaratory relief plaintiffs seek will do anything to assist an appraiser in his or her task, which is limited to determining the “actual cash value and loss” for each item under clear statutory direction, a task the appraiser is uniquely qualified to do.
A petition for a rehearing was denied October 9, 2013, and appellants’ petition for review by the Supreme Court was denied December 11, 2013, S214390. Cantil-Sakauye, C. J., did not participate therein. Werdegar, J., was of the opinion that the petition should be granted.

 See Kirkwood v. California State Automobile Assn. Inter-Ins. Bureau (2011) 193 Cal.App.4th 49 [122 Cal.Rptr.3d 480] (Kirkwood) and Doan v. State Farm General Ins. Co. (2011) 195 Cal.App.4th 1082 [125 Cal.Rptr.3d 793] (Doan).

 “If the court determines that there are other issues between the petitioner and the respondent which are not subject to arbitration and which are the subject of a pending action or special proceeding between the petitioner and the respondent and that a determination of such issues may make the arbitration unnecessary, the court may delay its order to arbitrate until the determination of such other issues or until such earlier time as the court specifies.” (Code Civ. Proc., § 1281.2, subd. (c), 3d par., italics added.)

 The Doan court observed that the trial court there was apparently unaware of its discretion under Code of Civil Procedure section 1281.2 to stay the appraisal pending resolution of the legal questions (Doan, supra, 195 Cal.App.4th at p. 1099), and ultimately directed the trial court to exercise its discretion, concluding that “[g]iven the court’s discretion to stay the appraisal, section 2071 cannot be interpreted to include an inflexible requirement compelling an insured to submit to an appraisal before seeking a judicial determination of issues that are not within the ambit of the appraisal.” (Doan, at p. 1104.)

 In their cause of action for declaratory relief, plaintiffs seek a judicial determination of “the parties’ rights and obligations regarding . . . section 2051,” and describe the “actual controversy” as “whether [Farmers] is complying” with the statute and regulations when it adjusts partial losses, “whether [Farmers] is taking depreciation on structural components that are not normally subject to repair and replacement during the useful life of the structure”; “whether [Farmers] may only consider age or useful life of an item, or excessively rely on age or useful life, in determining depreciation”; whether the statute “permits Farmers to depreciate property through a standardized schedule rather than through an examination of the condition of the property”; “whether Farmers is entitled to conceal its method of depreciation from its insureds”; and “whether Farmers must first adjust the claim and calculate [actual cash value] in compliance with . . . section 2051 before it can invoke the appraisal provision of the policies.”

I note that the trial court took judicial notice of the legislative history of Assembly Bill No. 2962 (2003-2004 Reg. Sess.), the act amending section 2051 in 2004. (Stats. 2004, ch. 605, § 2, p. 4763.) I am also aware that not all documents in a legislative history are cognizable to show legislative intent (see Kaufman & Broad Communities, Inc. v. Performance Plastering, Inc. (2005) 133 Cal.App.4th 26, 37 [34 Cal.Rptr.3d 520] [authoring legislator’s files not communicated to the Legislature as a whole are among documents not constituting legislative history].) Here, the legislative history includes, from the files of Assembly Bill No. 2962’s author, a list of “committee questions” to the author of the bill, with answers. One of those questions was whether the Department of Insurance should “list all non-depreciable components of a structure in regulation.” The answer was: “No. It would be difficult to have a comprehensive list of such non-depreciable items listed in regulations as it involves commercial property, residential property and personal property. The major difficulty involves commercial property machinery and inventory, wherein it would be difficult to create a comprehensive list. It would be more appropriate to approach any questions (on whether a particular property should be depreciated) on a case-by-case basis." (Assemblymember Pavley, questions and answers on Assem. Bill No. 2962 (2003-2004 Reg. Sess.) (June 15, 2004) italics added.) Whether this is “cognizable” legislative history or not, it demonstrates a common sense view of how the appraisal process should work.

 Community Assisting’s additional conclusion—that, in light of the appraisal scheme in section 2071, the plaintiff “failed to demonstrate an unlawful or unfair practice”—does not apply in this case. (Community Assisting, supra, 92 Cal.App.4th at p. 895.) In Community Assisting, the complaint “[did] not allege that [the insurers] coerced the insureds to settle for replacement cost less depreciation, or that they engaged in any acts which might have been a breach of the standard form policy.” (Id. at p. 894.) That is not the case here.