Filed 9/23/13

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| FRANCES MARC ALEXANDER et al., | B239840 |
| Plaintiffs and Respondents. | (Los Angeles County Super. Ct. No. BC460992) |
| v. | |
| FARMERS INSURANCE COMPANY, INC., et al., | |
| Defendants and Appellants, | |

APPEAL from an order of the Superior Court of Los Angeles County. Carl J. West, Judge. Affirmed.

Barger & Wolen, Steven H. Weinstein and Peter Sindhuphak, for Defendants and Appellants Farmers Insurance Company and Farmers Insurance Exchange.

Kerr & Wagstaffe, Michael Von Loewenfeldt, Ivo Labar and Kelly Corcoran, for Plaintiffs and Respondents Frances Marc Alexander, et al.

_____

Frances Marc Alexander and Thomas and Anna Downie (Respondents) brought a class action lawsuit against Farmers Insurance Company, Inc.[1] and Fire Insurance Exchange alleging illegal adjusting practices. In particular, Respondents alleged that Farmers failed to comply with the method for determining actual cash value set forth in the Insurance Code[2] for a partial loss in a fire. Farmers moved to compel an appraisal of the Respondents' claims, contending that the dispute centered on the value of the Respondents' loss. The trial court denied Farmer's motion without prejudice to renewing it at a later stage of the litigation. We affirm the trial court's ruling.

## FACTUAL AND PROCEDURAL HISTORY

Respondents were insured under Farmers homeowners policies when they each suffered partial losses to their homes and personal belongings due to fire in 2009 and 2010. They submitted property claims to Farmers, identifying the damaged property and the estimated actual cash value of each item. Respondents disputed Farmers' adjustment of their claims, complaining that Farmers' method of calculating depreciation was illegal under the Insurance Code.

## I. Relevant Provisions of the Insurance Code

Section 2070 requires that all fire policies in California be on a standard form, which is set forth in section 2071. The standard form fire policy requires the insurer to pay "the actual cash value of the property at the time of loss." In the event of a loss, the insured must give written notice to the insurer and "furnish a complete inventory of the destroyed, damaged and undamaged property, showing in detail quantities, costs, actual

---

[1]    Appellants note that Farmers Insurance Company, Inc. is a Kansas corporation which does not write policies in California and has been erroneously sued. However, it appears that Fire Insurance Exchange (Fire) and Farmers Insurance Company are affiliated. The Farmers Insurance logo is prominently displayed on Respondents' policies, which is included in the record, and the trial court refers to appellants as Farmers. For ease of reference, we will refer to appellants collectively as Farmers, but by doing so, do not intend to imply Farmers Insurance Company, Inc. is a proper party in this action.

[2]    All further section references are to the Insurance Code unless otherwise specified.

cash value and amount of loss claimed[.]" Actual cash value is determined by the following calculation under the statute: "In case of a partial loss to the structure, or loss to its contents, the amount it would cost the insured to repair, rebuild, or replace the thing lost or injured less a fair and reasonable deduction for physical depreciation based upon its condition at the time of the injury or the policy limit, whichever is less. In case of a partial loss to the structure, a deduction for physical depreciation shall apply only to components of a structure that are normally subject to repair and replacement during the useful life of that structure." (§ 2051, subd. (b)(2).)

In the Code of Regulations enforcing fair claims settlement practices, the Insurance Commissioner has explained, "When the amount claimed is adjusted because of betterment, depreciation, or salvage, all justification for the adjustment shall be contained in the claim file. Any adjustments shall be discernable, measurable, itemized, and specified as to dollar amount, and shall accurately reflect the value of the betterment, depreciation, or salvage. Any adjustments for betterment or depreciation shall reflect a measurable difference in market value attributable to the condition and age of the property and apply only to property normally subject to repair and replacement during the useful life of the property. The basis for any adjustment shall be fully explained to the claimant in writing." (Cal. Code Regs., tit. 10, § 2695.9, subd. (f).)

If the parties fail to agree on the actual cash value or the amount of loss, they are required to participate in an appraisal. Once an appraisal demand is made and accepted, each party selects a "competent and disinterested" appraiser. Each party's appraiser will state separately the actual cash value and loss of each item. If they disagree, they will submit their differences to a competent and disinterested umpire who they have jointly selected. (§ 2071.) "Appraisal proceedings are informal unless the insured and this company mutually agree otherwise. For purposes of this section, 'informal' means that no formal discovery shall be conducted, including depositions, interrogatories, requests for admission, or other forms of formal civil discovery, no formal rules of evidence shall be applied, and no court reporter shall be used for the proceedings. The appraisers shall then appraise the loss, stating separately actual cash value and loss to each item; and,

3

failing to agree, shall submit their differences, only, to the umpire. An award in writing, so itemized, of any two when filed with this company shall determine the amount of actual cash value and loss. Each appraiser shall be paid by the party selecting him or her and the expenses of appraisal and umpire shall be paid by the parties equally." (§ 2071.)

"An appraisal provision in an insurance policy constitutes an agreement for contractual arbitration. [Citations.]" (*Doan v. State Farm General Ins. Co.* (2011) 195 Cal.App.4th 1082, 1093 (*Doan*); see also *Louise Gardens of Encino Homeowners' Assn., Inc. v. Truck Ins. Exchange, Inc.* (2000) 82 Cal.App.4th 648, 658 ["[a]n agreement to conduct an appraisal contained in a policy of insurance . . . is considered to be an arbitration agreement subject to the statutory contractual arbitration law"].) Accordingly, "[a]ppraisal hearings are a form of arbitration and are generally subject to rules governing arbitration." (*Kacha v. Allstate Ins. Co.* (2006) 140 Cal.App.4th 1023, 1031; see also *Devonwood Condominium Owners Assn. v. Farmers Ins. Exchange* (2008) 162 Cal.App.4th 1498, 1505 ["appraisal award proceedings are subject to the arbitration provisions outlined in the California Arbitration Act"].) However, while "arbitrators are frequently, by the terms of the agreement providing for arbitration, . . . given broad powers [citation], . . . appraisers generally have more limited powers." (*Jefferson Ins. Co. v. Superior Court* (1970) 3 Cal.3d 398, 403, italics omitted (*Jefferson*).)

Specifically, "'[t]he function of appraisers is to determine the amount of damage resulting to various items submitted for their consideration.'" (*Jefferson, supra*, at p. 403; see also *Safeco Ins. Co. v. Sharma* (1984) 160 Cal.App.3d 1060, 1063 ["appraisers have the power only to determine a specific question of fact, 'namely, the actual cash value of the insured [item]'"].) It is "'not their function to resolve questions of coverage and interpret provisions of the policy.'" (*Jefferson, supra*, at p. 403; see also *Kirkwood v. California State Automobile Assn. Inter-Ins. Bureau* (2011) 193 Cal.App.4th 49, 58-59 (*Kirkwood*) ["[a]ppraisers have no power to interpret the insurance contract or the governing statutes"]; *Doan, supra*, 195 Cal.App.4th at p. 1094 ["'[m]atters of statutory construction, contract interpretation and policy coverage are not encompassed within the ambit of [an insurance] appraisal'"].) Likewise, an appraisal panel generally

4

lacks the authority "to determine whether an insured lost what he [or she] claimed to have lost or something different." (*Safeco, supra,* at p. 1065.)

Section 2071 provides that "[n]o suit or action on this policy for the recovery of any claim shall be sustainable in any court of law or equity unless all the requirements of this policy shall have been complied with, and unless commenced within 12 months next after inception of the loss." (§ 2071.) Under the California Code of Regulations, title 10, section 2695.9, subdivision (e), "[o]nce the appraisal provision under an insurance policy is invoked, the appraisal process shall not include any legal proceeding or procedure not specified under California Insurance Code Section 2071. Nothing herein is intended to preclude separate legal proceedings on issues unrelated to the appraisal process."

## II.    Class Action Lawsuit

Respondents brought suit on May 6, 2011, on behalf of a class of homeowners who received a settlement or an offer of settlement from Farmers of a partial loss property claim for less than the applicable policy limits within the statute of limitations period. The complaint[3] alleged that Farmers failed to comply with the method for determining actual cash value set forth in section 2051(b). "Instead, Farmers determines the [actual cash value] of personal property contents and structural components in partial losses by first determining a replacement cost. Farmers then deducts depreciation according to a secret schedule that is based on the age of the item." Respondents further alleged that Farmers did not consider the pre-loss physical condition of damaged property and arbitrarily deducted the depreciation based on "its secret formula based on age."

As examples, Respondents alleged that the Downies submitted claims for a set of lead crystal longchamp wine glasses that was 10 years old with a replacement cost of $82.13. Farmers calculated the actual cash value of the wine glasses to be 82 cents. Similarly, a 20-year old solid walnut china buffet with a replacement cost calculated by the Downies of $1,594.32 was calculated by Farmers to have a $15.94 actual cash value. When the Downies complained, Farmers "arbitrarily depreciated the majority of items by

---

**3**    The facts and allegations are taken from the first amended complaint, which is the operative complaint.

50 percent." Respondents alleged these depreciation rates were contrary to section 2051, which permits "reasonable deduction for physical depreciation based upon its condition at the time of the injury . . ." (§ 2051, subd. (b)(2).) Respondents alleged Farmers did not ask for or receive any information about the condition of the items claimed in the loss.

Respondents alleged Farmers applied a similar illegal practice to the structural components of damaged buildings. Under section 2051, "a deduction for physical depreciation shall apply only to components of a structure that are normally subject to repair and replacement during the useful life of that structure." (§ 2051, subd. (b)(2).) Respondents complained that "Farmers is taking depreciation from structural components that are not normally repaired or replaced within the useful life of the structure. Second, Farmers calculates a depreciation percentage on a straightline basis by dividing the age of the component by an estimate of the component's useful life. Both of these practices violate Insurance Code section 2051." For example, Respondents alleged that "Farmers depreciated all of the following types of components despite acknowledging that they had a useful life of at least 150 years (and thus are clearly not normally subject to repair or replacement during the useful life of the house): Baseboards, insulation, doors, closets, window framing, wiring, and fireplace components." Respondents alleged that Farmers' unlawful depreciation methodology resulted in "lowballing" claims to insureds who were then "coerce[d] . . . into mandatory appraisal of the insurance policy, despite the fact that the appraisal provisions of the standard form policy are not applicable to a dispute over the interpretation of Insurance Code section 2051."

Respondents' complaint alleged claims for declaratory relief, unfair competition under Business and Professions Code section 17200, breach of contract and bad faith. As to the declaratory relief cause of action, Respondents alleged that "[a]n actual controversy has arisen and now exists between the parties concerning whether Defendant is violating Insurance Code section 2051(b) and the other regulations cited herein, including but not limited to: (1) whether Defendant is complying with Insurance Code section 2051(b) and California Code of Regulation section 2695.9(f) when it adjusts

6

partial losses to contents claims; (2) whether Defendant may only consider age or useful life of an item, or excessively rely on age or useful life, in determining depreciation; (3) whether Insurance Code section 2051(b) permits Farmers to depreciate property through a standardized schedule rather than through an examination of the condition of the property; (4) whether Farmers is entitled to conceal its method of depreciation from its insureds; and (5) whether Farmers must first adjust the claim and calculate [actual cash value] in compliance with Insurance Code section 2051 before it can invoke the appraisal provision of the policies."

Respondents alleged similar controversies exist with relation to how Farmers adjusted partial losses to structural loss claims: "(1) whether Defendant is complying with Insurance Code section 2051(b) and California Code of Regulation section 2695.9(f) when it adjusts partial losses to structural loss claims; (2) whether Defendant is taking depreciation on structural components that are not normally subject to repair and replacement during the useful life of the structure; (3) whether Defendant may only consider age or useful life of an item, or excessively rely on age and useful life, in determining depreciation; (4) whether Insurance Code section 2051(b) permits Farmers to depreciate property through a standardized schedule rather than through an examination of the condition of the property; (5) whether Farmers is entitled to conceal its method of depreciation from its insureds; and (6) whether Farmers must first adjust the claim and calculate [actual cash value] in compliance with Insurance Code section 2051 before it can invoke the appraisal provision of the policies."

Farmers demurred to and moved to strike the complaint on grounds that there was no violation of section 2051 and the insureds were contractually obligated to first complete an appraisal. Farmers also moved to compel appraisal pursuant to the policy provisions. The demurrer was overruled in its entirety and the motion to strike was denied, with the exception of certain allegations relating to restitution not at issue here.

The trial court also denied the motion to compel appraisal, but without prejudice to a renewal of the motion at a later stage of the litigation. The court reasoned the motion was premature but that it could be viable at a later stage after certain legal and factual

7

issues were determined in anticipation of class certification. Farmers timely appealed the denial of its motion to compel appraisal.

## DISCUSSION

The parties disagree about the underlying nature of their dispute. Farmers characterizes it as a valuation dispute about the actual value of the insured property, which is subject to appraisal. Respondents describe it as a dispute over the legality of Farmer's uniform depreciation policies, which is not subject to appraisal. This matter is about both of those issues. The question we are faced with is whether appraisal may be deferred pending resolution of the claims that cannot be decided by an appraisal.

Farmers relies on a line of decisions which hold that the remedy for an insured in such circumstances is appraisal. (*Community Assisting Recovery, Inc. v. Aegis Security Ins. Co.* (2001) 92 Cal.App.4th 886 (*Community Assisting); Pivonka v. Allstate Ins. Co.* (E.D.Cal. Dec. 9, 2011, Civ. No. 2:11-cv-1759-GEB-CKD) 2011 U.S.Dist. Lexis 142770 (*Pivonka); Enger v. Allstate Ins. Co.* (9th Cir. 2010) 407 Fed.Appx. 191, 193 (*Enger*).) Respondents, on the other hand, rely on a series of state court decisions which hold that the trial court has discretion to defer appraisal pending a judicial determination of non-arbitrable issues raised in a declaratory relief claim. (*Kirkwood, supra,* 193 Cal.App.4th at pp. 58-60; *Doan, supra,* 195 Cal.App.4th at p. 1104.)

We conclude that the more reasoned approach lies with *Kirkwood* and *Doan,* which hold that the decision whether to stay the appraisal is committed to the trial court's sound discretion. We turn first to an extended discussion of the relevant case law.

## I.     Relevant Case Law

In *Community Assisting*, the plaintiff non-profit corporation brought an action on behalf of the general public under Business and Professions Code section 17204 against 194 insurance companies which provided polices in California with language substantially identical to that required under section 2071. (*Community Assisting, supra*, 92 Cal.App.4th at p. 890.) The complaint alleged that the insurance companies improperly adjusted property loss claims on the basis of replacement cost less depreciation rather than on fair market value in violation of *Jefferson, supra,* 3 Cal.3d

8

398 (*Jefferson*).  The plaintiff sought injunctive relief to compel readjustment of all claims based on this alleged unlawful business practice.  (*Community Assisting, supra,* at p. 891.)

The insurance companies' demurrers were sustained without leave to amend and the judgment was affirmed on appeal.  The appellate court determined that the complaint failed to state an unlawful business practice because the "simplistic legal formulation" mischaracterized the holding in *Jefferson* and failed to take into consideration the safeguard of the appraisal process.  (*Community Assisting, supra,* at p. 892.)  Reasoning that "[t]he Legislature has provided more than one measure to adjust claims under Insurance Code section 2071, 'actual cash value' being only one," the court held that appraisal was the proper remedy.  (*Id.* at p. 895.)  "Thus, notwithstanding how the insurer approaches valuation of the damaged property during adjustment of the claim, the Legislature has provided the remedy to which the parties must resort for determination of the amount of loss."  (*Id.* at p. 893.)  The complaint failed to adequately allege that the insurance companies' method of valuation was an "'unfair practice.'"  There was no allegation the standard form language was not included in the policy, that the insurers interfered with the appraisal process or engaged in any act which might have been a breach of the contract.  (*Id.* at p. 894.)

Following *Community Assisting* and the 2003 wildfires in Southern California, the Legislature amended section 2051 in 2004 to set out actual cash value as the sole measure to adjust claims under section 2071.  The amendments also provided the precise formula to determine actual cash value.  (See Stats. 2004, ch. 605, § 2, p. 4763.)  These amendments were introduced as part of the Homeowner's Bill of Rights.

*Kirkwood, supra,* 193 Cal.App.4th at pages 58-60 and *Doan, supra,* 195 Cal.App.4th at page 1104 were decided after the 2004 amendments.  In *Kirkwood,* the First District Court of Appeal held that appraisal was properly deferred until after the trial court ruled on the contractual and statutory interpretation issues presented in the insured's declaratory relief action since these issues could not be determined by the appraisers.  There, the insured submitted a personal property claim to the insurer after a fire destroyed

9

his home and personal belongings.  (*Kirkwood, supra,* at p. 54.)  He provided a physical depreciation amount based on the actual condition of each item at the time of the loss.  The insurer applied a blanket depreciation of 50-80 percent to most categories of property.  The depreciation was tied to the age of the item without regard to its condition.  (*Id.* at p. 55.)  When the insured complained of "excessive depreciation," the insurer responded that there were no guidelines provided by the Department of Insurance on how to determine actual cash value but that the language of the contract justified the insurer's approach.

The insured then sued for declaratory relief, breach of contract, bad faith, and violation of the unfair competition law on a class basis.  (*Kirkwood, supra,* at p. 56.)  The declaratory relief cause of action asserted a present controversy as to whether the insurer violated section 2051(b) and various regulations by depreciating personal property without regard to the actual physical condition of the property.  The insurer moved to compel appraisal, which was denied by the trial court without prejudice.  (*Id.* at p. 57.)  Distinguishing several federal cases (discussed post) as well as *Community Assisting*, the court of appeal affirmed the trial court's order, reasoning that "[o]nly the court, not an appraiser, can deliver declaratory relief as to the proper meaning of section 2051 within the context of [the insurer's] insurance adjusting practices."  (*Id.* at p. 62.)

*Kirkwood* distinguished *Community Assisting*, noting it was decided before the 2004 amendment of section 2051, setting forth how actual cash value should be calculated.  Prior to the enactment of the new provisions relating to depreciation, "there was no statutory direction dictating how the insurer was to measure the actual cash value of recovery under an open policy."[4]  (*Kirkwood, supra*, 193 Cal.App.4th at p. 60.)  Therefore, the *Community Assisting* court did not "construe the statute and regulation governing depreciation practices under an open policy." (*Kirkwood, supra*, 193 Cal.App.4th at p. 60.)

---

[4]     In an open policy, "the value of the subject matter is not agreed upon, but is left to be ascertained in case of loss."  (§ 411.)

"The result favored by [the insurer] and the federal district court decisions . . . bear the real, deleterious consequence of forcing insureds to pay for an appraisal prior to a definitive judicial declaration establishing the correct legal basis for determining actual cash value. A judicial declaration that [the insurer's] interpretation of section 2051(b) and its policy *does not* violate the statute would be the end of the line: no appraisal would be necessary, and insureds . . . would not be forced to pay for an appraisal. On the other hand, a contrary judicial declaration would inform the appraisal in this case and would have the meritorious effect of staving off future appraisals and litigation based on the same unlawful behavior. In our view judicial economy favors resort to declaratory relief in this instance by heading off duplicative future actions challenging [the insurer's] statutory interpretation as reflected in its adjustment policy." (*Kirkwood, supra,* at pp. 62-63.)

Three months later, the Sixth Appellate District Court of Appeal concurred with *Kirkwood's* holding in *Doan, supra*, 195 Cal.App.4th at page 1104. There, the plaintiff held a property insurance policy from State Farm which contained the standard form appraisal clause. After the insured's home and its contents were destroyed by a fire, the parties were unable to agree on the value of the lost personal property. Acting on behalf of himself and other State Farm policyholders in California, the insured filed a putative class action for declaratory and other relief, alleging that State Farm's method of calculating depreciation violated the terms of the policy and the Insurance Code. (*Id.* at pp. 1087-1089.) The trial court sustained State Farm's demurrer to the complaint without leave to amend on the ground that the insured had failed to first submit his valuation dispute to an appraisal. (*Id.* at p. 1090.) The judgment was reversed on appeal. The appellate court held that the insured could pursue his cause of action for declaratory relief because the statutory and contractual interpretation issues raised in his action were beyond the limited authority of an appraisal panel to decide. (*Id.* at p. 1098.)

Turning to the question of whether the interpretation issues or the valuation issue should be resolved first, the court concluded that, under Code of Civil Procedure section 1281.2, subdivision (c), "insurance appraisals – like arbitration proceedings – may be

stayed pending the resolution of legal issues that lie outside the appraiser's jurisdiction."
(*Doan, supra*, 195 Cal.App.4th at p. 1101.) The court further observed that "it is particularly appropriate to do so where a determination of the legal issues may obviate the need for an appraisal or inform the appraisal process." (*Ibid*.) Given the insured's allegations, a judicial declaration that State Farm's depreciation practice did not violate the Insurance Code or the policy could make an appraisal unnecessary. (*Id.* at p. 1104.) Because it appeared the trial court was unaware of its discretionary authority under Code of Civil Procedure section 1281.2, the matter was remanded to the trial court with directions to exercise its discretion to consider whether and when declaratory relief should be granted. (*Doan,* at p. 1105.)

Seven months after *Doan* was decided, the federal district court issued an opinion in *Pivonka, supra,* 2011 U.S.Dist. Lexis 142770, distinguishing *Kirkwood* and *Doan.* There, a group of plaintiffs sued Allstate for declaratory relief, breach of contract, unfair competition and bad faith. Plaintiffs alleged that Allstate used a secret, standardized schedule rather than the actual physical condition of the property to calculate depreciation. (*Pivonka, supra,* at p. *3.) Allstate moved to compel appraisal, "arguing *Doan* and *Kirkwood* are inapplicable because unlike the parties in those cases, 'the parties here do not have a dispute about the standard that governs appropriate depreciation — and indeed Allstate quoted from the standard in pre-litigation correspondence.'" (*Id.* at p. *7.) In the referenced pre-litigation correspondence, Allstate advised its insured that: "As you are aware, under the State of California's Department of Insurance regulations, an insurer must consider the age and condition of an item during its evaluation. The damaged/destroyed items were input in to the estimate using an average condition however, if you can substantiate that the items were in better than average condition, please submit this information to me." (*Id.* at pp. *7-*8.) The district court found that "Plaintiffs make the conclusory argument that statutory and regulatory questions have to be clarified before these factual disputes are decided, this argument is based on unsupported contentions and does not show the need to clarify the parties' legal relations before appraisal is ordered." (*Id.* at pp. *12-*13.) As a result, the parties were ordered to

12

appraisal and the case was stayed pending the conclusion of the appraisal process.  (*Id.* at p. *13.)

      *Pivonka* relied upon *Enger, supra,* 407 Fed.Appx. 191, an unpublished Ninth Circuit opinion.[5]  In *Enger,* the plaintiff alleged that Allstate improperly undervalued her damaged property because it failed properly to calculate actual cash value under section 2051.  The *Enger* court stated, "By the plain language of the insurance policy, it is immaterial that Enger believes the cause of the disagreement concerning the actual cash value is Allstate's alleged use of an improper valuation  method.  The contract makes no exception where the source of the dispute is the valuation method used: so long as the parties 'fail to agree as to the actual cash value or amount of loss,' the appraisal remedy is triggered at the request of either party."[6]  (*Enger*, at p. 193.)

## II.    Analysis

      Faced with substantially the same facts and procedural posture as the cases discussed above, we conclude that *Kirkwood* and *Doan* provide the better reasoned approach to resolving this issue.  We agree that a trial court has the discretion to defer appraisal in appropriate circumstances, just as it has "the power to sever arbitrable claims from inarbitrable ones and to stay either the arbitration or the judicial proceedings pending the outcome of the other."  (*Doan, supra*, 195 Cal.App.4th at pp. 1098-1099.)  Although Code of Civil Procedure section 1281.2 generally requires a trial court to order the parties to arbitration once the existence of a valid arbitration agreement covering the dispute is established, it expressly provides an exception: "If the court determines that

---

[5]    Under rule 32.1 of the Federal Rules of Appellate Procedure, citation to unpublished opinions issued on or after January 1, 2007, is permitted.

[6]    *Kirkwood* criticized the trial court's opinion in *Enger v. Allstate Ins. Co.* (E.D. 2009) 682 F.Supp.2d 1094, for "blindly" embracing an incorrect interpretation of *Community Assisting* that the appraisal process must be exhausted before suit may be brought.  According to *Kirkwood,* the *Enger* trial court failed to discuss the nature of the declaratory relief claim or delve into the propriety of invoking that relief.  (*Kirkwood, supra,* 193 Cal.App.4th at p. 61.)  We believe the *Kirkwood* court would have similar criticisms of the Ninth Circuit's opinion in *Enger.*  It is four pages long and fails to cite to *Community Assisting* or discuss the propriety of invoking declaratory relief.

13

there are other issues between the petitioner and the respondent which are not subject to arbitration and which are the subject of a pending action or special proceeding between the petitioner and the respondent and that a determination of such issues may make the arbitration unnecessary, the court may delay its order to arbitrate until the determination of such other issues or until such earlier time as the court specifies." (Code. Civ. Proc., § 1281.2, subd. (c), 3d par.) As the rules governing arbitration apply with equal force to insurance appraisals, the decision whether to stay the appraisal is committed to the trial court's sound discretion. (*Doan, supra,* at p. 1100.)

Farmers argues that section 2071 requires that "appraisal must be exhausted before a suit or action is 'sustainable in any court.'" Farmers relies on *Community Assisting* for the proposition that appraisal is the mandatory remedy, even if the insureds challenge the valuation methodology. *Community Assisting* is distinguishable. As noted by *Kirkwood*, *Community Assisting* was decided prior to the 2004 amendments. Also, the court in *Community Assisting* found that the plaintiff failed to assert an unlawful business claim because it failed to allege the defendant's conduct was unlawful. In particular, the plaintiff failed to allege the defendant "engaged in any acts which might have been a breach of the standard form policy." (*Community Assisting, supra,* 92 Cal.App.4th at p. 894.) *Community Assisting* was not asked to consider the availability of declaratory relief to construe the Insurance Code and its attendant regulations. The court had already reached the merits of the plaintiffs' claim and found it lacking. The demurrer was sustained without leave to amend. Thus, it did not need to invoke Code of Civil Procedure section 1281.2 to determine whether other issues not subject to appraisal needed to be determined prior to appraisal. Here, there has been no such conclusion on the merits of Respondents' claims and the trial court retains discretion to delay its order to arbitrate under Code of Civil Procedure section 12.81.2.

Not only is appraisal a statutory prerequisite to a lawsuit, Farmers contends Respondents lack standing to advance their other causes of action without a showing of economic injury, which can only come about after an appraisal. Farmers argues that "[i]f appraisers conclude that the amount of the loss is equal to or less than the amount Fire

14

paid to Respondents, they would have no damages or standing to seek relief against Fire. Only if the appraisers determine that [] the amount of loss exceeds the amount Fire paid to Respondents, would there be some basis to proceed with the lawsuit." As explained in *Doan*, "there is no need to demonstrate damages in order to qualify for declaratory relief." (*Doan, supra,* 195 Cal.App.4th at p. 1104.) Section 1060 of the Code of Civil Procedure specifically provides that "[t]he declaration may be had before there has been any breach of the obligation in respect to which said declaration is sought."

Having determined that the trial court has discretion to defer appraisal, we review its denial of the motion to compel appraisal for abuse of that discretion.[7] (*Doan, supra*, at p. 1102, fn. 8.) We find none. Here, the trial court exercised its discretion to defer an appraisal pending a judicial declaration of the parties' rights under the insurance policies and statutes. The trial court reasoned that *Kirkwood* was directly on point and observed that "the allegations of *Kirkwood* are strikingly similar to those at issue in the instant litigation, and counsel in *Kirkwood* are the same as those here." Respondents alleged in their complaint that controversies exist regarding the rights and obligations of the parties under the statutes and policy. On appeal, Respondents summarize these controversies as "(1) whether certain structural items may legally be depreciated at all, and (2) whether Farmers may deduct formulaic depreciation of personal property and structural components based on age, instead of only taking depreciation for the physical wear and tear of items." The trial court concluded that "[t]he motion is premature, due to the Plaintiffs' challenge of the alleged unlawful institutional practice of Farmers under Insurance Code § 2051 and attendant regulations, the legality of [which] must be assessed in advance of any appraisal."

---

[7] Farmers argues that the standard of review is de novo. We disagree. It is true that a court's decision as to arbitrability is subject to de novo review. (*Molecular Analytical Systems v. Ciphergen Biosystems, Inc.* (2010) 186 Cal.App.4th 696, 707.) But here, Farmers acknowledges that the claims regarding its valuation methodology are not subject to appraisal. There is no dispute that valuation of the loss items is subject to appraisal. The question here is whether that appraisal may be deferred, and an abuse of discretion standard of review is applicable.

*Kirkwood's* view on judicial economy applies equally here: "[a] judicial declaration that [the insurer's] interpretation of section 2051(b) and its policy *does not* violate the statute would be the end of the line: no appraisal would be necessary, and insureds . . . would not be forced to pay for an appraisal. On the other hand, a contrary judicial declaration would inform the appraisal in this case and would have the meritorious effect of staving off future appraisals and litigation based on the same unlawful behavior. In our view judicial economy favors resort to declaratory relief in this instance by heading off duplicative future actions challenging [the insurer's] statutory interpretation as reflected in its adjustment policy." (*Kirkwood, supra*, 193 Cal.App.4th at p. 63.)

Appraisal may also be averted if Respondents receive the declaratory judgment they seek. At oral argument, Respondents' counsel indicated they want a declaration that Farmers' practices are illegal as well as an order that Farmers readjust the claims in conformity with section 2051. If Farmers conducts a new adjustment conforming to the law, all parties may be satisfied. Then, there would be no dispute about the amount of the loss and no appraisal would be necessary. Moreover, a judicial declaration of what the statute means would, as in *Kirkwood*, "inform the appraisal." For example, the trial court could declare that certain components are <u>not</u> "normally subject to repair and replacement" under section 2051(b)(2) if they have a life expectancy exceeding 100 years or if their life expectancy exceeds a certain proportion of the useful life of the structure to which it is attached. We acknowledge that it may not be workable for a trial court to determine that certain structural components, such as framing or electrical or plumbing, are categorically not normally subject to repair or replacement. We do not agree with Farmers, however, that whether something is "normally" subject to repair and replacement should be considered on a case-by-case basis. Without some guidance from the courts regarding the meaning of section 2051, it is virtually guaranteed that all partial losses will result in litigation and appraisal.

Farmers attempts to distinguish *Kirkwood* and *Doan* by adopting Allstate's successful strategy in *Pivonka*. In its opening brief, Farmers claims there is no dispute between the parties as to the meaning of section 2051. Farmers "acknowledges that depreciation cannot be based *solely* on age and does not dispute that section 2051 requires consideration of condition." Farmers also agrees that it may not depreciate "structural components that are not normally repaired and replaced during the useful life of a structure." "Thus, a judicial declaration on the meaning of the statute is unnecessary in this case . . . If the appraisal confirms that Fire did in fact pay Respondents the 'actual cash value' (or more) to which they were entitled, further litigation over Fire's allegedly improper valuation practices at the time of Respondents' losses – especially on the classwide basis that Respondents are attempting to pursue here – would be a complete waste of time and resources." We are not persuaded to accept Farmers' "acknowledgment" at face value.

First, this argument was not presented below and is waived. In its demurrer to the first amended complaint, Farmers argued that "[t]he essence of Plaintiffs' argument is that the words 'physical depreciation' as used in section 2051(b)(2) restrict insurers and appraisers to depreciation based on the damaged property's *observable* condition just prior to the loss and nothing else. This is wrong." Farmers urged the trial court to interpret section 2051(b)(2) to allow an item's age to be considered in depreciating lost or damaged property "because a legal determination of the meaning of this statute is subject to resolution by this Court at the pleading stage." Farmers' attorney's statements during hearings at the trial court that condition could also be considered in calculating actual cash value is not equal to an argument that declaratory relief is unnecessary because there is no dispute as to the meaning of section 2051(b)(2). To the contrary, Farmers recognized there was a dispute over the meaning of section 2051(b)(2).

Second, Farmers' "acknowledgment" that condition is to be considered in calculating depreciation does not lay the dispute to rest. The complaint sufficiently describes a valuation process that does not take into consideration a loss item's condition. That Farmers now, on appeal, concedes it must take condition into consideration in no

17

way erases those allegations. Nor does Farmers' acknowledgment that certain structural losses are not subject to depreciation circumvent the allegations in the complaint.

At oral argument, Farmers counsel noted that Farmers advised Alexander in a letter that "[a]ny depreciation applied to this estimate of repair is based on average quality, condition, age and useful life, unless otherwise noted." Unlike in *Pivonka,* where Allstate explained to its insureds that it did take physical condition into consideration and offered to recalculate depreciation if its insureds could show their items were of superior, rather than average, quality, there is no indication in the record that Farmers did the same in adjusting Respondents' claims, despite the generic language in its letter. There is also no indication that Farmers' acknowledgment on appeal translates into changed adjustment practices in the future. Thus, we disagree with Farmers' argument that "whether or not Fire sufficiently considered condition in arriving at an item's actual cash value in evaluating Respondents' losses is – for purposes of determining whether the matter is subject to appraisal – beside the point and not grounds to avoid an appraisal. The dispute, at best, is one of degree in Fire's consideration of condition, and not a statutory interpretation disagreement requiring declaratory relief."

Third, we do not agree that further litigation of Farmers' alleged illegal valuation practices would be obviated if it turns out the appraisal amount is equal to or more than what Farmers has offered to pay Respondents. Indeed, Farmers concedes that after appraisal is complete, "Respondents may proceed with a challenge to Fire's alleged improper practice for calculating depreciation." Whether the appraisers correctly calculate actual cash value of Respondents' losses is irrelevant to whether Farmers correctly calculated actual cash value when it adjusted the claims.

### DISPOSITION

We affirm the order denying, without prejudice, Farmers' motion to compel appraisal.  Respondents are awarded costs on appeal.

**CERTIFIED FOR PUBLICATION**


BIGELOW, P. J.

I concur:


RUBIN, J.

**Alexander et al. v. Farmers Insurance Company, Inc., et al.**
**B239840**
**Grimes, J., Dissenting.**

I respectfully dissent, because I conclude the appraisal Farmers has demanded under the insurance contract and the statute may not be deferred while the trial court resolves legal issues that cannot be decided by the appraisers. I believe the trial court abused its discretion when it denied Farmers' motion to compel an appraisal. The arbitration statute specifies that the court may delay an appraisal only when the court finds that decision of other issues that cannot be decided in an appraisal may make the appraisal unnecessary. No such finding was made or could reasonably be made in this case. Moreover, even if the *Kirkwood* and *Doan*[1] cases are correct that appraisal may be deferred for a declaratory judgment on statutory interpretation issues, there are none in this case; the issues are factual ones about whether Farmers does what section 2051 requires it to do. A declaratory judgment that Farmers does or does not do what section 2051 requires will not assist or inform an appraisal, as the appraisers are in any event bound to follow section 2051. Consequently, there is no justification for failing to follow the mandate of section 2071, requiring an appraisal on demand.

Before I elaborate, it may be helpful to mention the following. I agree that an appraiser cannot, and appraisal will not, resolve the principal legal issue plaintiffs raise: whether Farmers' methodology for determining actual cash value is illegal. An appraisal will simply determine the actual cash value of plaintiffs' lost or damaged property. And if plaintiffs' allegations are true, Farmers has caused them harm. But requiring plaintiffs to comply with the appraisal provisions of the contract does not erect a barrier to the pursuit of their claims. If the appraisers apply the legally required standard, plaintiffs will receive the full amount due under the insurance contract for their property loss, and

---

[1] See *Kirkwood v. California State Automobile Assn.* (2011) 193 Cal.App.4th 49 (*Kirkwood*) and *Doan v. State Farm General Ins. Co.* (2011) 195 Cal.App.4th 1082 (*Doan*).

1

will do so sooner rather than later, after protracted discovery and courtroom proceedings. If the appraisers fail to use the legally required standard, the appraisal award may be vacated just as it was in *Jefferson Ins. Co. v. Superior Court* (1970) 3 Cal.3d 398 (*Jefferson*). But in either case, plaintiffs may pursue their claims after the appraisal.

In my view, the trial court failed to follow the dictates of both section 2071 and the general arbitration statutes when the court denied, "without prejudice to renewal," Farmers' motion to compel appraisal.

First, the statutory and contractual language of section 2071 is clear. To the extent plaintiffs are suing "on this policy for the recovery of any claim," they may not do so unless "all the requirements of this policy shall have been complied with . . . ." (§ 2071.) One of those requirements is an appraisal, on demand of either party, in any instance where "the insured and this company shall fail to agree as to the actual cash value or the amount of loss . . . ." (*Ibid.*) That has happened in this case.

Second, the arbitration statutes compel the same result. Code of Civil Procedure section 1281.2 requires a trial court to order arbitration (the court "shall order the [parties] to arbitrate") if an agreement to arbitrate exists. Here, an agreement, mandated by statute, exists. The trial court has the discretion to delay an order to arbitrate, but that discretion is not unlimited; it is specifically circumscribed by statute. The court has discretion to delay an order to arbitrate if it determines that (as here) there are other issues not subject to appraisal that are the subject of a pending action, but *only* if it *also* finds that "a determination of such issues may make the [appraisal] unnecessary . . . ." (§ 1281.2, subd. (c), 3d par.; see also *Acquire II, Ltd. v. Colton Real Estate Group* (2013) 213 Cal.App.4th 959, 978 (*Acquire II*) ["When the dispute between parties to an arbitration agreement includes both arbitrable and nonarbitrable claims, section 1281.2(c) limits the trial court's discretion to delaying arbitration, and only if the court first

2

determines that resolving the nonarbitrable claims in court may make arbitration of the arbitrable claims unnecessary."].)[2]

Here, the trial court made no such determination, and it is hard to see how the court could have done so. Indeed, the trial court said, "[t]his is not to say that appraisal may not be viable at a later stage of the litigation." It does not appear that the trial court believed, when it delayed the appraisal, that appraisal would be unnecessary – or even that there was any significant possibility it would be unnecessary – after the court issues a declaration on the legality of Farmers' practices. That being so, the court had no authority under the arbitration statutes to delay the appraisal.

The trial court understandably relied on the *Kirkwood* and *Doan* cases, involving issues virtually identical to those in this case. In *Kirkwood*, the court affirmed the trial court's order denying, without prejudice, the insurer's motion to compel appraisal. *Kirkwood* described the trial court's order as "a matter of sequencing, in effect deferring the appraisal until the interpretation issues were resolved." (*Kirkwood, supra,* 193 Cal.App.4th at p. 60.) *Kirkwood* held that "[t]his approach does not run afoul of section 2071 or the arbitration statutes." (*Ibid.*) It is on this point that I disagree with *Kirkwood*. In my view, Code of Civil Procedure section 1281.2 does not give the court discretion to "sequenc[e]" the appraisal for case management purposes; it may defer the appraisal only if it finds a determination of other issues may make the appraisal unnecessary.

But even if I agreed with *Kirkwood* on that point, in this case – in contrast to *Kirkwood* – counsel for Farmers has advised this court that Farmers now agrees with plaintiffs on the legal interpretation of section 2051: namely, that depreciation may not

---

[2] "If the court determines that there are other issues between the petitioner and the respondent which are not subject to arbitration and which are the subject of a pending action or special proceeding between the petitioner and the respondent *and that a determination of such issues may make the arbitration unnecessary*, the court may delay its order to arbitrate until the determination of such other issues or until such earlier time as the court specifies." (Code Civ. Proc., § 1281.2, subd. (c), 3d par., italics added.)

be based solely on age and that consideration of physical condition is required.  While this concession – made for the first time in the trial court on the day of the hearing – appears to be a belated attempt to strengthen its position that appraisal is required now rather than later, Farmers is bound by that concession, and in fact there is no need to construe the meaning of the statute.  Of course the question remains whether Farmers in fact complies with the statute, but that is a very different question, and will remain to be litigated no matter what value the appraisers put on plaintiffs' loss.

Before I elaborate on these points, it may be useful to summarize the rationale that brought the *Kirkwood* and *Doan* courts to a conclusion different from mine.

### 1.    *Kirkwood*

As stated above, the *Kirkwood* court was presented with claims much like the plaintiffs' claims in this case.  In *Kirkwood*, the court affirmed the trial court's order denying, without prejudice, the insurer's motion to compel appraisal, agreeing with the trial court's reasoning "that [the plaintiff] had properly invoked its declaratory relief powers to resolve a matter that was outside the scope of a statutory and contractual appraisal." (*Kirkwood, supra,* 193 Cal.App.4th at p. 53.)  The court said:

> "We think the trial court was right in its conclusion that an appraisal was not mandated 'right now' because the declaratory relief cause of action asked the court to make a declaration that [the insurer] was misconstruing section 2051(b).  Denying the motion to compel appraisal without prejudice, the [trial] court was clear:  'I don't see how the plaintiff gets out of an appraisal later.'  In other words, given the limited role of an appraisal, the court essentially bifurcated the case, determining that it should first issue a declaration on the statutory issue, '*and then have it inform the appraisal when it goes forward.*'  In short the court ruled that the agreement to arbitrate did not include the threshold contract and statutory interpretation issues, which were beyond the purview of the appraisers.  We agree." (*Kirkwood, supra,* 193 Cal.App.4th at p. 57, italics added.)

*Kirkwood*'s analysis consisted first of the conclusion that deferring the appraisal did not "run afoul of section 2071 or the arbitration statutes," and second, of an analysis and rejection of the California and federal cases (more on these cases, *post*) suggesting that appraisal must precede other litigation.  *Kirkwood* said that the federal cases did not

4

address "the central reality of this case, namely that the trial court determined [the plaintiff] properly invoked its declaratory relief powers, thereby justifying its nonprejudicial rejection of [the insurer's] motion to compel appraisal." (*Kirkwood, supra,* 193 Cal.App.4th at p. 62.) In other words, because the appraiser cannot resolve contractual and statutory interpretation issues, "therefore appraisal was properly deferred in this case." (*Ibid.*)

Further, *Kirkwood* pointed to "the real, deleterious consequence of forcing insureds to pay for an appraisal prior to a definitive judicial declaration establishing the correct legal basis for determining actual cash value." (*Kirkwood, supra,* 193 Cal.App.4th at p. 62.) The court observed that a judicial declaration in the insurer's favor would be "the end of the line," with no need for an appraisal, saving the insured from being forced to pay for one. (*Ibid.*) And, if the court found otherwise, the declaration "would inform the appraisal in this case and would have the meritorious effect of staving off future appraisals and litigation based on the same unlawful behavior." (*Id.* at pp. 62-63.) The court concluded that "judicial economy favors resort to declaratory relief in this instance by heading off duplicative future actions challenging [the insurer's] statutory interpretation as reflected in its adjustment policy." (*Id.* at p. 63.)

I am not persuaded that a request for declaratory relief – a discretionary remedy in equity – allows the trial court to ignore a specific statutory restriction on its discretion to delay an appraisal. Policy considerations such as judicial economy in "staving off future appraisals and litigation based on the same unlawful behavior" (*Kirkwood, supra,* 193 Cal.App.4th at p. 63) or the "strong policy favoring declaratory relief" (*Doan, supra,* 195 Cal.App.4th at p. 1101) have no place in a trial court's exercise of its discretion to delay appraisal; the only consideration is the one stated in the statute: if the court finds resolution of other issues may make the appraisal unnecessary. (Cf. *Acquire II, supra,* 213 Cal.App.4th at p. 978 ["a trial court must decide whether [Code of Civil Procedure] section 1281.2(c) applies based only on the three conditions identified in that subdivision"; "[o]nly then may the court consider judicial economy and other similar factors in deciding how to exercise the discretion section 1281.2(c) confers"].)

So, in my view, *Kirkwood* used an erroneous standard when it concluded appraisal could properly be deferred based on the appraiser's inability to decide statutory and contractual interpretation issues. And, the suggestion by the *Kirkwood* court that no appraisal would be necessary if the trial court determined that the insurer's practices did not violate section 2051 (which seemed rather unlikely) appears to be speculative and contrary to the trial court's own statement that "appraisal later" was likely.

## 2. *Doan*

The other case plaintiffs rely on to support the trial court's denial of Farmers' motion to compel appraisal is *Doan, supra,* 195 Cal.App.4th 1082, where the court concluded the trial court "has discretion to stay the appraisal proceeding pending resolution of the legal questions." (*Id.* at p. 1099.) *Doan* presented the "identical" question "decided in *Kirkwood*: Must a party submit to an appraisal under section 2071 prior to obtaining a judicial determination of the meaning of section 2051?" (*Id.* at p. 1102.) *Doan* continued: "*Kirkwood* answered that question in the negative, concluding that a decision to stay the appraisal, in order the resolve 'the interpretation issues' first, 'does not run afoul of section 2071 or the arbitration statutes.'" (*Ibid.*, quoting *Kirkwood, supra*, 193 Cal.App.4th at p. 60.)

*Doan*, unlike *Kirkwood*, referred to and quoted the pertinent arbitration statute, giving the court discretion to delay an arbitration. (*Doan, supra,* 195 Cal.App.4th at p. 1100.) The *Doan* court found, citing Code of Civil Procedure section 1281.2, subdivision (c), that *Kirkwood*'s rationale was "bolstered by explicit statutory authority permitting the discretionary stay of appraisal proceedings pending resolution of issues outside the appraisers' limited jurisdiction."[3] (*Doan,* at p. 1104.)

---

[3] The *Doan* court observed that the trial court there was apparently unaware of its discretion under Code of Civil Procedure section 1281.2 to stay the appraisal pending resolution of the legal questions (*Doan, supra,* 195 Cal.App.4th at p. 1099), and ultimately directed the trial court to exercise its discretion, concluding that "[g]iven the court's discretion to stay the appraisal, section 2071 cannot be interpreted to include an inflexible requirement compelling an insured to submit to an appraisal before seeking a

But *Doan*, despite quoting the statute, does not acknowledge or address the express limitation on the court's discretion: a finding that delaying the appraisal for the resolution of other issues "may make the [appraisal] unnecessary . . . ." (Code Civ. Proc., § 1281.2, subd. (c), 3d par.; see also *Acquire II, supra,* 213 Cal.App.4th at p. 978; *RN Solution, Inc. v. Catholic Healthcare West* (2008) 165 Cal.App.4th 1511, 1521 ["The court would then have had discretion to delay its order to arbitrate the arbitrable claims under section 1281.2(c), *only* if it first determined that the adjudication of the nonarbitrable claims in court might make the arbitration unnecessary." (italics added)].) Instead, the *Doan* court observed that the "decision whether to stay the appraisal pending resolution of the interpretation issues is committed to the trial court's sound discretion," and that "[a] number of factors inform that decision, including policy considerations." (*Doan, supra,* 195 Cal.App.4th at p. 1100.) *Doan* enumerated several policies the trial court could consider, including the "strong policy favoring arbitration," the "strong policy favoring declaratory relief," and judicial economy. (*Id.* at pp. 1100-1101.)

None of the cases *Doan* cites on the trial court's discretion involves the court's discretion to delay arbitration between two parties who have agreed to arbitrate; they involve the court's discretion under Code of Civil Procedure section 1281.2, subdivision (c), where litigation with third parties is at issue. (E.g., *Cronus Investments, Inc. v. Concierge Services* (2005) 35 Cal.4th 376.) That provision of the arbitration statute is irrelevant to this case. In short, *Doan* does not persuade me that policy considerations not identified in the arbitration statute may be used to "inform" the court's decision on whether to delay an appraisal.

The trial court's failure to follow the mandate of Code of Civil Procedure section 1281.2 is a sufficient reason to reverse the trial court's order denying Farmers' motion to compel appraisal as an abuse of discretion. But other reasons likewise support the conclusion that reversal is appropriate.

---

judicial determination of issues that are not within the ambit of the appraisal." (*Doan,* at p. 1104.)

7

First, there is no real statutory interpretation issue in this case. Farmers has conceded that the plain language of section 2051 requires it, as plaintiffs contend, to consider the physical condition of the property in arriving at the actual cash value, and to apply depreciation to structural components only if they are normally repaired or replaced within the useful life of the structure. The only dispute to be resolved by declaratory relief is whether Farmers in fact does this.

Second, there is no reason to think a judicial declaration that Farmers does not, in fact, follow the statute, will somehow "inform the appraisal in this case," thereby justifying delay of the appraisal. The appraisers are required to follow the statute, and if they make an award based on a misconception of the law, the award may be vacated. (*Jefferson, supra,* 3 Cal.3d at p. 403.) But there is no reason to believe the appraisers will misconceive the law. In short, the declaratory relief plaintiffs seek – in substance, a declaration that Farmers does not use the condition of the item to determine physical depreciation in violation of section 2051, subdivision (b)(2) – will do nothing at all to affect or "inform" the appraisal process, and there is thus no purpose to be served by declaratory relief in advance of the appraisal.

This point becomes clear if we consider this question: what declaration about the illegality of Farmers' practices can the trial court provide that will assist the appraiser in determining the "actual cash value and loss to each item"? (§ 2071.) Stated differently, what will the trial court's declaration tell an expert appraiser that he or she does not already know about determining the actual cash value of an item?[4]

---

[4] In their cause of action for declaratory relief, plaintiffs seek a judicial determination of "the parties' rights and obligations regarding . . . section 2051," and describe the "actual controversy" as "whether [Farmers] is complying" with the statute and regulations when it adjusts partial losses, "whether [Farmers] is taking depreciation on structural components that are not normally subject to repair and replacement during the useful life of the structure"; "whether [Farmers] may only consider age or useful life of an item, or excessively rely on age or useful life, in determining depreciation"; whether the statute "permits Farmers to depreciate property through a standardized schedule rather than through an examination of the condition of the property"; "whether Farmers is entitled to conceal its method of depreciation from its insureds"; and "whether

8

The answers to questions about Farmers' practices (e.g., whether Farmers may depreciate property through a standardized schedule rather than through examination of the condition of the property) are of no use to an appraiser, who has only one mission: to determine the actual cash value of the property. It simply does not matter to an appraiser what Farmers has done or not done. The appraiser's task is to determine the actual cash value (§ 2071), that is, "the amount it would cost" to repair or replace the thing lost, "less a fair and reasonable deduction for physical depreciation based upon its condition at the time of the injury." (§ 2051, subd. (b)(2).) Nothing the trial court says about the legality of Farmers' adjustment practices will add to the appraiser's expertise in making that factual determination of value.

Under questioning at oral argument, plaintiffs' counsel indicated that plaintiffs first want discovery, to find out what Farmers is actually doing, and then want a declaration from the court that those practices are illegal (and an order to Farmers to readjust the claims in conformity with section 2051). As to personal property, plaintiffs want the trial court to declare, for example, that physical depreciation means "wear and tear only," that items may not be depreciated based on age, and that Farmers is not allowed to use a standardized depreciation schedule. As to structural components, plaintiffs want the court to declare, for example, that depreciation may not be deducted for framing and other designated categories of structural components they contend are not normally subject to repair and replacement during the useful life of the structure.

In my view, it is unnecessary for such a declaration to precede the appraisal Farmers has requested, and to which it is entitled under section 2071. Expert appraisers already know what "physical depreciation" and "condition" mean, and they do not need the court to explain them.

I find it particularly striking that the trial court should be asked to declare that specific categories of structural components – framing, for example (the complaint also

Farmers must first adjust the claim and calculate [actual cash value] in compliance with . . . section 2051 before it can invoke the appraisal provision of the policies."

9

mentions "electrical, floor coverings, fencing, . . . cement, carpentry/trimwork, finishes, . . . rough carpentry, [and] plumbing," among a number of other categories) – are not "normally subject to repair and replacement" during the useful life of the structure and therefore may not be depreciated.  Who better than an expert appraiser would know the useful life of a structure, and who better than an expert appraiser would know which of the components of a structure are "normally subject to repair and replacement" during that structure's useful life?  Plaintiffs say an appraiser cannot decide whether a particular type of component is "normally" repaired or replaced during the useful life of a structure because that is not a "valuation" question.  But of course it *is* a valuation question.  The appraiser is charged with determining "the amount it would cost the insured to repair, rebuild, or replace" a partial loss to the structure, and the appraiser cannot do that – he or she cannot come to a loss amount – *without* knowing or deciding which components are and which components are not normally repaired or replaced during the structure's useful life.[5]

---

[5] I note that the trial court took judicial notice of the legislative history of Assembly Bill No. 2962, the act amending section 2051 of the Insurance Code in 2004.  (Stats. 2004 (2004 Reg. Sess.) ch. 605, § 2, p. 665.)  I am also aware that not all documents in a legislative history are cognizable to show legislative intent (see *Kaufman & Broad Communities, Inc. v. Performance Plastering, Inc.* (2005) 133 Cal.App.4th 26, 37 [authoring legislator's files not communicated to the Legislature as a whole are among documents not constituting legislative history].)  Here, the legislative history includes, from the files of Assembly Bill No. 2962's author, a list of "committee questions" to the author of the bill, with answers.  One of those questions was whether the Department of Insurance should "list all non-depreciable components of a structure in regulation."  The answer was: "No.  It would be difficult to have a comprehensive list of such non-depreciable items listed in regulations as it involves commercial property, residential property and personal property.  The major difficulty involves commercial property machinery and inventory, wherein it would be difficult to create a comprehensive list.  *It would be more appropriate to approach any questions (on whether a particular property should be depreciated) on a case-by-case basis.*"  (Assem. Bill No. 2962 (Pavley) Questions and Answers (rev. 6/15/2004), italics added.)  Whether this is "cognizable" legislative history or not, it demonstrates a common sense view of how the appraisal process should work.

Thus, even disregarding what I see as the clear mandate of section 2071 and the general arbitration statute, the rationale for delaying an appraisal – grounded on "inform[ing] the appraisal" (*Kirkwood, supra,* 193 Cal.App.4th at p. 63) – is unfounded. Appraisers do not need a judicial opinion on the legality of Farmers' practices, or on the meaning of "physical depreciation," or on precisely which structural components are normally repaired or replaced during the structure's useful life.

Finally, I cannot end without observing that there is California and federal precedent supporting the view that, entirely aside from the strictures of Code of Civil Procedure section 1281.2, subdivision (c), appraisal may not be delayed.

In *Community Assisting Recovery, Inc. v. Aegis Security Ins. Co.* (2001) 92 Cal.App.4th 886 (*Community Assisting*), the plaintiff brought an unfair competition law claim against 194 insurance companies, alleging they used the wrong standard to adjust property loss claims (replacement cost less depreciation, rather than the fair market value standard the *Jefferson* court had held was the proper standard), and seeking injunctive relief to compel readjustment of all claims based on fair market value (unless replacement cost less depreciation would be more favorable to the insured). (*Community Assisting,* at p. 890.) The appellate court affirmed the dismissal of the action on demurrer, finding the complaint did not state an unlawful business practice, because it "mischaracterize[d] the holding in *Jefferson* and fail[ed] to take into consideration the safeguard of the appraisal process provided by the Legislature . . . ." (*Community Assisting,* at p. 892.) Among other things, the court said that section 2071 "requires appraisal for resolution of contested claims"; the appraisal term "creates an arbitration agreement subject to the statutory contractual arbitration law"; the appraisal award "may be vacated or confirmed"; and so, "notwithstanding how the insurer approaches valuation of the damaged property during adjustment of the claim, the Legislature has provided the remedy to which the parties must resort for determination of the amount of the loss." (*Community Assisting,* at p. 893.)

11

In short, *Community Assisting* tells us that, as here, the insurer's method of valuing property – legal or not – was irrelevant to the determination of the amount of the loss, which the Legislature placed in the hands of the appraisers.[6]

In addition, federal cases have resolved complaints alleging insurers used an improper valuation method by concluding appraisal is required first. In *Enger v. Allstate Ins. Co.* (9th Cir. 2010) 407 Fed.Appx. 191, 193, the Ninth Circuit viewed the issue raised by the individual plaintiff as "a straightforward question of contract interpretation," despite the plaintiff's "attempts to characterize her suit as raising issues of statutory interpretation warranting declaratory relief . . . ." (*Id.* at pp. 192-193.) "The contract makes no exception where the source of the dispute is the valuation method used: so long as the parties 'fail to agree as to the actual cash value or amount of loss,' the appraisal remedy is triggered at the request of either party," and "because 'full compliance with the policy terms' is a contractual prerequisite to bringing suit, [the plaintiff] first must submit to the appraisal." (*Id.* at p. 193.)

The federal district court in *Pivonka v. Allstate Ins. Co.* (E.D.Cal. Dec. 12, 2011, No. 2:11-cv-1759-GEB-CKD) 2011 U.S.Dist. Lexis 142770 (*Pivonka*) reached the same conclusion, granting the insurer's motion for appraisal and staying the case pending the conclusion of the appraisal process. In *Pivonka*, as here, the insurers pointed out that, unlike *Kirkwood* and *Doan*, the parties in *Pivonka* "'do not have a dispute about the standard that governs appropriate depreciation,'" as shown by prelitigation correspondence from the insurer. (*Pivonka*, at pp. *7-*8.) *Pivonka* concluded the record presented "factual disputes concerning whether [the insurer] failed to pay the actual cash value of the subject property, and falsely represented that the amount set forth in its

---

[6] *Community Assisting*'s additional conclusion – that, in light of the appraisal scheme in section 2071, the plaintiff "failed to demonstrate an unlawful or unfair practice" – does not apply in this case. (*Community Assisting, supra,* 92 Cal.App.4th at p. 895.) In *Community Assisting*, the complaint "[did] not allege that [the insurers] coerced the insureds to settle for replacement cost less depreciation, or that they engaged in any acts which might have been a breach of the standard form policy." (*Id.* at p. 894.) That is not the case here.

settlement was the 'actual cash value.'  The gravamen of each pled claim depends on resolution of these factual disputes." (*Id.* at p. *12.)  The court saw no need "to clarify the parties' legal relations before appraisal is ordered." (*Id.* at p. *13.)

In summary, I am not suggesting that plaintiffs' claims should not go forward in due course.  Plaintiffs are entitled to discovery and a chance to show Farmers engages in illegal practices that result in unnecessary appraisals or that effectively coerce insureds into settlements for less than the actual cash value of their lost property.  I do, however, assign great importance to statutory mandates.  Here, the statutes tell us, first, that Farmers is entitled to an appraisal on demand (§ 2071) and second, that the trial court has discretion to delay an appraisal only where the court's decision on other issues between the parties may make the appraisal unnecessary (Code Civ. Proc., § 1281.2, subd. (c), 3d par.).  As the latter finding cannot be made here, Farmers is entitled to an appraisal now, not later.  Moreover, nothing in the declaratory relief plaintiffs seek will do anything to assist an appraiser in his or her task, which is limited to determining the "actual cash value and loss" for each item under clear statutory direction, a task the appraiser is uniquely qualified to do.


GRIMES, J.


13